## Faught v. Commonwealth.

(Decided June 13, 1924.)

### Appeal from Daviess Circuit Court.

1. Homicide—$900.00 and Six Months Held Not Excessive for Involuntary Manslaughter.—Verdict fixing fine of $900.00 and six months' confinement at hard labor was not excessive for involuntary manslaughter in reckless driving of automobile.

2. Homicide—Conviction of Involuntary Manslaughter by Automobile Sustained by Evidence.—Conviction of involuntary manslaughter for killing by reckless driving of automobile held sustained by evidence.

3. Homicide—Admission of Evidence Held Not Prejudicial.—In prosecution for involuntary manslaughter by running automobile against pedestrian, admission of evidence as to intoxication of defendant and possession of whiskey, if incompetent, held not prejudicial in view of mild penalty assessed.

SLACK, BIRKHEAD & SLACK for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Affirming.

Appellant was convicted in the Daviess circuit court of the charge of involuntary manslaughter for carelessly and recklessly driving an automobile on a public street in the city of Owensboro over or against Samuel Fox, a young colored boy, inflicting injuries upon him from which he died within a few minutes thereafter. From a judgment fixing his punishment at a fine of $900.00 and six months' confinement at hard labor in the county jail, appellant prosecutes this appeal.

The errors assigned in the motion and grounds for a new trial are:

1. Failure to sustain the demurrer to the indictment.

2. Erroneous instructions to the jury.

3. Verdict is excessive and is the result of prejudice and passion and is contrary to and not sustained by the evidence.

4. Exclusion of competent and admission of incompetent evidence.

The first two assignments are apparently conceded to be without merit since they are neither discussed nor referred to in counsel's brief upon this appeal, and no attempt is made to point out wherein either the indict-

ment or the instructions are faulty. Upon examination we find no prejudicial error in them. They are substantially the same as those in a strikingly similar case tried in the same court and in which a judgment of conviction was affirmed by this court. Held v. Commonwealth, 183 Ky. 209.

Consideration of the third ground for reversal necessitates a review of the evidence. The tragedy occurred on Plum about midway between 7th and 8th streets in the city of Owensboro at about five o'clock in the afternoon of September 11, 1923. Plum street runs north and south and is intersected at right angles by 7th and 8th streets. The following is a summary of the testimony of each of the witnesses:

Jesse Priest was standing on the corner of Seventh and Plum; he saw Fox coming from the south on the east side of Plum; half way between Seventh and Eighth Fox started out into the street and stopped and waited at the edge of the grass. Appellant came from the south in his automobile on the east or left-hand side of the street at the rate of 25 or 30 miles an hour. There was another man in the car with him; no other cars or wagons were in sight. Appellant drove his car against Fox, knocking him down and rolling him some distance, and then continued on down the street without stopping. The driver of the car stuck his head out. Fox was carrying a package containing meat and tomatoes, which fell at the point where he was struck. After the homicide there was a blood spot three or four feet east of the center of the street. Fox's neck was broken, the back of his head mashed, his teeth knocked out, lip split and a hole knocked through his right cheek. He died in a few minutes.

Mary Buckner saw Fox start across the street from the east side and step back and stand at the edge of the grass when he saw appellant approaching. Appellant's automobile, running at an unusually rapid rate and on the wrong side of the street, struck Fox and dragged him some four feet nearer to the center of the street and went on, apparently going faster immediately after the homicide. Fox died almost immediately, his neck having been broken, his head mashed, etc.

Golda Wall testified that Fox started across the street and stepped back when he saw appellant's automobile, and waited for it to pass. The automobile was going unusually fast and never slowed down either before

or after the homicide. She did not see any other machine on the street at that time.

Louvena Reed did not see Fox struck; saw apppellant's automobile traveling faster than ordinary and at an unusual rate; saw Fox on the east side of the street. Immediately after the tragedy his body was lying on the left-hand or east side of the street towards the grass.

Gilbert Crawford states Fox started across the street from the east side, saw the approaching automobile and backed into the ditch and stood there. The automobile "whipped over" and struck Fox and dragged him a number of feet; it never stopped or slowed up, but kept going and was traveling at the rate of about 25 miles an hour. The homicide happened at the edge of the grass.

John Lyons, Jack Long and Jack Swearer, police officers of Owensboro, overtook appellant and his companion, Dinkelspeel, about nine miles from Owensboro, when they were in the act of loading the automobile on a ferry for the purpose of crossing the river into Indiana. Appellant was intoxicated and Dinkelspeel had been drinking. When appellant was notified that he was wanted, Dinkelspeel said to him, "Arthur, I told you we ought to stop." Appellant made no statement.

J. E. Jackson and A. L. Bollington, two other police officers, testified that appellant was intoxicated when he reached the jail and Dinkelspeel had been drinking.

Appellant, testifying for himself, stated that he was driving south on Plum street at about five o'clock in the afternoon; that the sun shining on his windshield and the smoke from a switch engine at Eighth street made it hard for him to see; at Eighth street he overtook another machine going in the same direction he was going; he drove to the left to pass it but did not get very far to the left of the center of the street, and so far as he knew nothing unusual happened. He was traveling about fifteen or eighteen miles an hour. If he struck a boy he knew nothing about it and did not see him and felt no jar. He was sober and had not had a drink. Dinkelspeel had been with him since around noon. He did not stop or look back after crossing Eighth street; did not know what kind of car he passed. When asked if Dinkelspeel said anything to him at any time about stopping he replied, "Yes, sir, as we got across the railroad he said to me, 'Don't you reckon we ought to stop?' and I said, 'Why?' and he said, 'I thought we hit something,' and I said 'I

didn't know we hit anything, and that was all that was said.''

"Did you know what he was talking about? A. No, sir; he said he saw a flash go by the car and he thought maybe we hit something, and I said we didn't hit anything. . . .

"Q. What did Dinkelspeel say, who was along? A. He said after we started back, 'I told you, Arthur, you ought to stop,' and I said I thought the other car hit something—the other car we was passing. He said he thought he seen a boy run across the street and thought maybe the other car hit him.''

On cross-examination he again repeated the statement that Dinkelspeel had said to him that he thought the car hit something.

Arthur Dinkelspeel testified that he was with appellant on the day of the accident and that they were going south on Plum street at the rate of about eighteen miles an hour. When asked if anything unusual happened he replied, "It all happened in a flash to me; I saw an object and I couldn't tell what it was, whether it was a boy, man, woman, or what it was. I said, 'I believe something happened, I believe you ought to stop.' Appellant said he didn't think anything had happened and did not stop. Witness could not say he felt any jar; he denied telling appellant that he thought the other car struck the boy, and did not remember seeing any other car. He himself had had two drinks that morning; didn't remember appellant's drinking and could not tell that he was drinking, but would not be positive appellant had not had anything to drink; it did not appear to him that appellant was drunk.

Roy O'Bryan was near Fifth and Plum streets when appellant passed him traveling fifteen or twenty miles an hour. Saw Fox's body after the homicide lying three to five feet east of the center of the street.

Earl Wood arrived at the scene of the tragedy five minutes after it happened, and at that time the groceries which Fox was carrying when struck were lying some five feet west of the center of the street. Saw a spot of blood east and three feet from the center of the street.

Fred Hall saw appellant at the railroad crossing near Eighth street, at which time he was traveling between fifteen and eighteen miles an hour; he pulled around another car and drove over to the edge of the street on the east or left-hand side. He did not see the homicide. Saw

appellant, whom he had known for seven years, about an hour after the homicide and he was then sober.

Martin Grimes was driving in a wagon near the railroad crossing, at which point the appellant passed him on the west side of the street, traveling at a moderate rate of speed. Fox, who was playing with some other chiildren on the west side of the street, picked up something and started to run back to the west sidewalk; the automobile was then right on him; in two more steps he would have been clear of the machine, but he stopped and turned his back and the left front wheel struck him. The automobile kept on going. He later said the boy was struck by the radiator. He did not take the number of the car as he thought every second it was going to stop, but he recognized appellant and Dinkelspeel in the car.

Grimes is the only witness who describes the homicide as having occurred on the west side of the street, and as he is contradicted on this point by every witness who testified upon this subject his evidence could have but little weight with the jury. On the whole appellant's witnesses were more damaging to him than they were helpful; their testimony alone would justify and sustain his conviction.

The jury were fully warranted in believing that appellant, while intoxicated, was driving his automobile at a rapid rate of speed on the wrong side of a public street in a populous city and without any regard for the safety of others rightfully using the street, and that while so doing he carelessly and recklessly ran down and killed young Fox, who was standing at the extreme edge of the left-hand side of the street. In the light of all the evidence the jury was extremely lenient in fixing appellant's punishment at only a fine of $900.00 and six months' confinement in the county jail. The mere statement of the evidence is sufficient refutation of the complaint that the verdict is excessive and the result of passion and prejudice.

Appellant also complains of the court's failure to sustain his objection and admonish the jury with reference to questions propounded to the arresting officers as to whether or not appellant had any whiskey or threw away any at the time of his arrest. It is argued that this evidence was incompetent, and that repetition of the question to the three officers was highly prejudicial and improperly prejudiced and influenced the minds of the jurors against appellant. Even if it be conceded that

such evidence was incompetent, it was of no importance and had no effect; that it did not influence the jury to appellant's prejudice is manifest from the mildness of the penalty assessed.

Perceiving no prejudicial error in the record, the judgment is affirmed.