[Crim. No. 1107. First Appellate District, Division One.—May 14, 1923.]

# THE PEOPLE, Respondent, v. XAVIER SCHMAH, Appellant.

[1] CRIMINAL LAW—MANSLAUGHTER—INTOXICATION—EVIDENCE.—In a prosecution for manslaughter arising from the defendant's act in driving his machine over a boy eight years of age, fracturing the boy's skull, as a result of which the boy died, evidence as to defendant's sobriety at the time, and as to the circumstances attending his driving a motor vehicle upon the public highway at the time of the fatality, are clearly admissible.

[2] ID.—INSTRUCTIONS—CONSIDERATION AS A WHOLE.—To determine whether or not the law was properly given for the guidance of the jury, the appellate court must look, not to an isolated excerpt from the instructions, but to the charge as a whole; and in this prosecution for manslaughter the instructions were quite comprehensive, being such as are usually given in manslaughter cases, and were fair to the defendant.

[3] ID. — INTOXICATION — GENERAL INSTRUCTION. — In such a prosecution, by giving a general instruction upon the subject of intoxication the court does not thereby instruct the jury as a matter of fact that the defendant was intoxicated.

[4] ID.—ABSTRACT INSTRUCTION — PREJUDICE — REVERSIBLE ERROR. — Whether an abstract instruction will call for a reversal of a case depends on the determination of the question whether, as a result of the instruction, prejudice resulted to the complaining party; and in this prosecution on a charge of manslaughter, conceding that the court's instruction in the language of section 22 of the Penal Code upon the subject of intoxication and intent injected into the case an immaterial element verging on error, that instruction, when taken in connection with the other instructions given, did not mislead or confuse the jury, and the defendant had a fair trial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

1. Homicide resulting from negligent operation of automobile as manslaughter, note, **Ann. Cas.** 1918E, 1146.

Admissibility of evidence of intoxication of driver of automobile as affecting homicide by negligence, note, **L. R. A.** 1917A, 313.

The facts are stated in the opinion of the court.

Jos. McInerney and R. P. Henshall for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

ST. SURE, J.—Defendant drove his automobile over Carl Grove, eight years of age, fracturing the boy's skull, as a result of which he died. The jury found a verdict of guilty of manslaughter as charged, and defendant appeals from the judgment of conviction and the order denying his motion for a new trial.

Counsel for defendant, in their opening brief, state the points as follows:

"There are two questions involved on this appeal. The first arises in connection with the meaning of an instruction to the jury concerning the intent of the defendant. In this regard the court gave section 22 of the Penal Code which provides, in substance, that intoxication is no excuse for crime, but where a particular intent is necessary for the commission of a particular crime the jury may take into consideration the fact of intoxication. The other concerns the sufficiency of the evidence to justify the verdict in view of this instruction; that is, where malice is no element of the crime, as here, and the act is made criminal because of the statute concerning negligence, is the evidence sufficient to justify the verdict where the court erroneously introduced into the case the issue,

"(a) That the act was not less criminal because the defendant was intoxicated; and

"(b) That they could look to the fact of his intoxication for the purpose of determining what his intent was when the question of his intent was entirely immaterial."

The instruction complained of reads as follows:

"The Court instructs you that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at

62 Cal. App.—13

the time in determining the purpose, motive or intent with which he committed the act.''

The evidence shows that on the afternoon of April 15, 1922, the defendant, accompanied by another person, was driving his automobile northerly along Nineteenth Avenue, San Francisco. His automobile was ''zigzagging down the street,'' at a rate of speed in excess of thirty miles an hour. Driving northerly he should have been on the right-hand side of the street, but it was shown that his automobile cut through some sand piled on the left-hand side of the street, in front of a building in course of construction. A short distance north of the sand pile, the deceased and his older brother were crossing the street. The older brother stepped back in time to avoid being struck by the automobile, but the younger one was struck down and run over, in the presence of his brother, his mother being but a few feet distant.

The following epitome of the evidence on the question of defendant's intoxication is mainly gathered from the briefs filed on behalf of defendant, and is fully supported by the record:

Dr. John E. Bohm testified that when the defendant was brought to the emergency hospital he was ''diagnosed as being slightly intoxicated,'' but that he carried on a conversation intelligently; that he did not stagger; that his conversation was coherent but his mentality slow, and he admitted that he had been drinking; that he could smell the odor of alcohol on his breath.

M. A. Klein testified that he saw the defendant coming down the street; that he was exceeding the thirty-mile speed limit and was ''zigzagging down the street,'' and that he saw the boy hit by the automobile. This witness also testified that the defendant spoke incoherently, was irrational, and that he was drunk.

Mrs. Mary U. Klein described seeing the preliminary incidents to the accident. She saw the defendant drive down the sidewalk, then into the middle of the street, ''zigzagging down the street.'' She said the defendant was drunk.

Andrew Hinsch testified that he did not detect the odor of any particular liquor on the breath of defendant but that his appearance was that he was intoxicated.

Richard L. Ingham, a retired police officer, was in the vicinity at the time of the accident and he observed the condition of the defendant and testified that he was drunk.

William C. Pennycook testified that he saw the defendant at the time of the accident and that he was very much under the influence of liquor.

Hezekiah Coombs, police officer, testified that he saw the defendant at the wheel of the automobile and placed him under arrest and that the defendant was drunk.

A. A. Sutton, a police officer, stated that he saw the defendant on the date in question; that he observed his demeanor and that while he would say the defendant was under the influence of liquor, he would not say he was drunk.

Daniel A. Fogarty, a police officer, testified that he received a certain flask from Officer Coombs in the condition the officer testified he found it in the possession of the defendant. Clinton G. Davis, city chemist, testified to analyzing the liquor contained in the flask and found it to contain alcohol 43.32 per cent. He described the liquor as "bootleg whisky," about 86 per cent proof.

Nicholas Delaney, defendant's companion in the automobile, testified that defendant and himself had drunk together two or three bottles of home-brew beer; that the defendant, while in the machine, partook of no liquor nor did he see any liquor in the car or elsewhere, and that the defendant was not drunk. Defendant testified that he drank three bottles of beer and nothing else; that he was not a drinking man; that he does not drink hard liquor at all; that he was not intoxicated.

The Motor Vehicle Act (Stats. 1915, p. 397 as amended by Stats. 1917, p. 382), section 17, provides that no person who is under the influence of intoxicating liquor shall drive or operate a motor vehicle on any public highway within this state. Section 20 of said act further provides that "the driver or operator of any vehicle in or upon any public highway shall drive such vehicle in a careful manner with due regard for the safety and convenience of pedestrians"; and this inhibition is repeated in another form in section 22.
[1] While it is true that in a case of manslaughter the question of intent is immaterial, yet, under the law in the instant case, evidence as to defendant's sobriety, and the circumstances attending his driving a motor vehicle upon the public highway at the time of the fatality, were clearly admissible. The atmosphere of the case evidencing intoxication on the part of the defendant was the result of his own

condition and acts. It is unquestioned that the defendant had been drinking. The instructions given by the court told the jury that they were the exclusive judges of the facts, the weight of the evidence and the credibility of the witnesses. The code definition of murder and manslaughter were given, and the distinction between these crimes and the elements composing and appertaining to each were properly defined. The instructions further told the jury that before they could convict the defendant they "must be satisfied beyond all reasonable doubt that the death of the deceased ensued as a direct and proximate result of the reckless or gross neglect of the defendant." Reasonable doubt was defined, likewise criminal negligence. Appropriate sections of the Motor Vehicle Act were quoted. Several instructions were given on the subject of intoxication which preceded and followed the language of section 22 of the Penal Code. The instructions further told the jury that the death of decedent might have been accidental or caused by mistake, in which event their verdict should be not guilty. Again and again the jury were admonished that they were the sole and exclusive judges of the evidence, and that they could not find the defendant guilty unless they were satisfied of his guilt beyond a reasonable doubt. The instructions further told the jury of the presumption of innocence, and how the law clothes the defendant with an ordinary good character for the traits involved in the accusation. [2] To declare whether or not the law was properly given for the guidance of the jury, we are to look, not to an isolated excerpt from the instructions, but to the charge as a whole. (*People* v. *Besold,* 154 Cal. 363, 370 [97 Pac. 871], and cases cited therein.) The instructions were quite comprehensive, being such as are usually given in manslaughter cases, and were fair to the defendant.

Counsel for defendant assert that the instruction complained of "without any qualification assumed, first, that a crime had been committed, and, secondly, that the defendant was intoxicated." We do not agree with this contention. Nowhere in the instructions do we find that the court either assumes that a crime was committed or that defendant was intoxicated. We agree with the attorney-general, that because the court gives an instruction upon the law appertaining to murder, it cannot be said

that the court thereby assumes or suggests that the defendant is guilty of murder.  [3]  If the court gives a general instruction upon the law of accomplices, it cannot be said that the court assumes that the defendant was guilty of participation in the crime; and where, under the law and under the circumstances of a case such as this, a court gives a general instruction upon the question of intoxication, it does not thereby instruct the jury as a matter of fact that the defendant was intoxicated.  It may be that the court, in the instant case, by the instruction complained of, injected into the case an immaterial element verging on error, but, even so, we are wholly unable to see how such instruction in any way actually prejudiced the defendant or tended to his prejudice, in respect to a substantial right.  (Sec. 1404, Pen. Code.)  The practical administration of justice should not be defeated by a too rigid adherence to a close and technical analysis of the instructions to the jury.  (*People* v. *Bruggy*, 93 Cal. 476, 483 [29 Pac. 26].)

We have seen that the language of the instruction is contained in section 22 of the Penal Code.  [4]  Whether an abstract instruction will call for a reversal of a case depends on the determination of the question whether, as a result of the instruction, prejudice resulted to the complaining party.  It is generally agreed that legal abstractions in a charge are not always hurtful and, unless it appears that they have been made so, the giving of them, while never to be approved, is not reversible error.  (14 R. C. L., sec. 49, p. 783.)  There may, and no doubt do, arise cases in which an abstract proposition of law would be and is harmful to the accused.  But this is not one of them.  (*People* v. *Rowland*, 12 Cal. App. 6, 24 [106 Pac. 428].)  We think the instruction, when taken in connection with the other instructions given, did not mislead or confuse the jury, and that the defendant had a fair trial.

The judgment and order appealed from are affirmed.

Tyler, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 12, 1923.

Richards, J., *pro tem.*, did not participate.