[Crim. No. 1848. Second Appellate District, Division Two.—December 11, 1929.]

THE PEOPLE, Respondent, v. H. J. LEUTHOLTZ, Appellant.

494

B. O. Tinglof and T. P. Hogan for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

CRAIG, Acting P. J.—The appellant was charged by information filed by the district attorney of Los Angeles County, consisting of three counts, with (1) having unlaw-

fully killed one W. J. Drake without malice, (2) driving an automobile upon a public highway while under the influence of intoxicating liquor, and (3) failing and neglecting to stop and render aid after striking W. J. Drake, as required by section 141 of the California Vehicle Act. (Stats. 1923, p. 562.) A jury having found him guilty, the defendant appealed from each of the judgments entered accordingly, and from an order denying a motion for a new trial.

The first ground advanced by appellant for reversal is an asserted deficiency of the evidence to support the judgments. It is undisputed that on October 24, 1928, at about 7 o'clock P. M., Drake was walking across Huntington Drive at or near the intersection of Ferntop Drive, when he was struck by an automobile proceeding at a rapid rate of speed in a northeasterly direction upon Huntington Drive, that he was hurled against the curbing, receiving injuries from which he died, and that the driver increased the speed of the machine soon afterward. The defendant, testifying in his own behalf, admitted that at about the same time he was driving a grey Cadillac automobile in a northeasterly direction along Huntington Drive, that he passed Ferntop Drive, and that when he arrived at the intersection of Eastern Avenue his machine collided with another car, and was overturned. He testified that his grey Cadillac had black fenders, two spare tires on the rear, each bearing a cover with a white strip in the center, tonneau shields, windshields on each side, and that he was driving at a speed between thirty and thirty-five miles per hour. Six witnesses identified an automobile of similar description as having passed the intersection of Ferntop Drive in a northeasterly direction along Huntington Drive at about the time mentioned. Briefly stated, it was testified by T. H. Hunter that a grey or tan Cadillac passed him, that he heard a noise or impact near the pedestrian zone at Ferntop and Huntington Drives, and that the Cadillac continued on; James A. Gilmer testified that a large grey car with black fenders passed him at about said point, at about forty to forty-five miles per hour; that it bore two spare tires, covered, with white tops; that he saw something dark go out from the car toward the sidewalk. This witness drove to Eastern Avenue, where he saw a Cadillac automobile which had been wrecked, and which he swore: "I recognized it from the rear as being the

car that passed me down on Huntington drive''; ''those spare tires on there, white strip around the tread of the cover''. A Mrs. May Lynch, an attendant at a service station at the corner of Ferntop and Huntington Drives, testified that Drake spoke to her at the station, started to cross the thoroughfare last mentioned, and was struck by a light or cream colored car, and thrown against the curbing; that the machine did not stop, but increased its speed. Frank Sharp, another attendant at said station, saw Drake struck down by a grey car as he entered the pedestrian zone; he swore that it had two spare tires on the rear, covered as the other witnesses described them, and was going at the rate of thirty-five to forty miles per hour. He testified that he saw the same car at Eastern Avenue that evening, and that it had been wrecked. Appellant testified that he was alone, and each of the witnesses testifying in this respect stated that there was but one person in the grey Cadillac car that fatally injured Drake and was soon afterward found at Eastern Avenue in a damaged condition, when the defendant was injured in the collision which he admitted having encountered. Blood stains were found on the windshield, front bumper and front of the top, of the defendant's machine.

Seven witnesses, including a physician, two police officers, and the driver of the car with which appellant collided after the fatal accident to Drake, testified positively that in their opinions he was under the influence of intoxicating liquor at the time of the accidents in question. The doctor applied various technical tests, and one of the officers asked him if he had been drinking, but received no reply. Several of the witnesses smelled liquor upon the defendant's breath. It was contended during the trial that he had been dazed by the collision, yet the physician detected alcohol on his breath, noted that the pupils of his eyes were dilated, and that there were other evidences of his unfitness to drive an automobile; his walk and balance were both unsteady. The only physical injuries found were . a one-half inch laceration and a one-half inch abrasion on the back of one hand.

■ We think the evidence abundantly tends to warrant the finding of the jury that Leutholtz drove the grey car which caused the death of W. J. Drake, that he was intoxicated at the time, and that he did not stop. It is insisted

that the evidence is consistent with the theory of unavoidable accident, since appellant swore that he saw no person on the street as he drove past the corner of Ferntop Drive and Huntington Drive. However, a witness who saw the accident testified that the car "slightly lowered the speed a little bit, you could just see it slacken, just perceptibly, and then go on faster." Whether from all of the evidence before them the jury might have concluded that a failure to observe pedestrians upon a public street was a mere oversight or was due to the defendant's condition, and whether the slackening and immediate increase of speed was caused by the sudden impact with Drake's body, followed by a desire to escape, is not a question of law for this court to decide. They were instructed in effect that they should determine beyond a reasonable doubt and to a moral certainty that the defendant knowingly struck W. J. Drake, and that he wilfully, knowingly and feloniously failed, neglected and refused to stop, give his name and address, and to render necessary assistance, in order to find him guilty. Upon the record before us we are not convinced that there was a miscarriage of justice in this respect requiring, a reversal of either judgment. (*People* v. *Watts,* 198 Cal. 776 [247 Pac. 884].) Appellant's criticism of the apparent inconsistency and improbable character of portions of the evidence is not of sufficiently serious import to require further discussion.

 A witness residing near the intersection at which Drake was struck found in the gutter a disc-shaped emblem from a Cadillac automobile, which fitted into the radiator which had been photographed after the accident in controversy. It is argued that the trial court erred in receiving the emblem in evidence for the reason that it may have been "planted" for the purposes of the case, and was produced under suspicious circumstances. A photographer identified the pictures as having been made by himself, and other witnesses testified positively that the automobile shown in the photographs was the same Cadillac car which was in the collision. The witness who found the emblem delivered it to an officer at the coroner's inquest, who also identified it while on the stand, and swore that he had fitted it into the radiator of appellant's car from which its emblem was missing. This evidence was submitted to the jury with

other circumstances, and under the instructions of the court it lay within their province to afford it such weight if any as it should merit. We do not think error was committed in receiving the object in evidence.

It is next asserted that the judgments should be reversed because the court refused to give to the jury a requested instruction. The defendant offered an instruction to the effect that before a verdict of guilty would be justified it would be necessary that the jury be satisfied beyond a reasonable doubt that he knew that he had struck some person. An instruction having been given that if the jury should find beyond a reasonable doubt and to a moral certainty that the defendant drove an automobile which struck and injured a human being, ''all of which the said defendant H. J. Leutholtz then and there well knew,'' etc., they should find him guilty, the offered instruction was refused. We do not think that stating the same rule in the negative would have rendered it more intelligible, and it is not error to refuse a proposed instruction which has been substantially covered. (*People* v. *Garcia*, 83 Cal. App. 463 [256 Pac. 876].)

Appellant complains of an instruction reciting that the law requires drivers in all cases to stop and render aid, whether the accident result from carelessness of the driver, the pedestrian, or both, or was unavoidable. The Supreme Court has held that the statute does not contemplate the duty of rendering aid unless it be shown that the defendant had knowledge of the accident. (*People* v. *Scofield*, 203 Cal. 703 [265 Pac. 914].) That an accident is indispensable to the application of the statutory mandate, is axiomatic, and if a driver be not informed of its occurrence it seems clear that the legislature did not intend that he should be classed among ''all cases'' wherein drivers knowingly injure persons with their automobiles. However, from the evidence adduced it became a question for the jury to determine as to whether or not this requisite to a conviction did in fact exist. A like instruction has under similar conditions been upheld as not injurious to the rights of the defendant. (*People* v. *Scofield, supra; People* v. *Graves*, 74 Cal. App. 415 [240 Pac. 1019].)

Complaint is also made of an instruction that ''contributory negligence, that is, negligence on the part of the

deceased which contributed to the injury causing his death, is no defense.'' This instruction is clearly justified under the authority of *People* v. *McKee,* 80 Cal. App. 200 [251 Pac. 675].

The judgments and order denying a new trial are affirmed.

Thompson (Ira F.), J., and Burnell, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 26, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 9, 1930.

All the Justices concurred.