[Crim. No. 4040.   Second Dist., Div. One.   Dec. 16, 1946.]

THE PEOPLE, Respondent, v. HAROLD JAMES
BARNETT, Appellant.

Sullivan, Lane & Clarke for Appellant.

Robert W. Kenny, Attorney General, and Laughlin E. Waters, Deputy Attorney General, for Respondent.

WHITE, J.—In an information, the defendant was charged in two counts with involuntary manslaughter, alleged to have been committed in violation of subdivision 2 of section 192 of the Penal Code. Following trial before the court sitting without a jury he was adjudged guilty on both counts. From such judgments of conviction he prosecutes this appeal.

Lakewood Boulevard in Los Angeles County intersects with Imperial Highway at an acute angle. At the point of intersection, Lakewood Boulevard, which carries the north-south traffic, is a four-lane highway, 75 feet in width, with a raised separation barrier in the center some five feet wide. Imperial Highway, at this point, is a four-lane east-west arterial, 40 feet in width.

Traffic at the intersection is controlled by a series of signals of the red, green, amber light type. Two signals, one conventionally mounted on a post, and the other attached thereto but in such a manner as to overhang the highway are located on the southwest corner and control the southbound traffic on Lakewood Boulevard. A similar arrangement of signals controlling the northbound traffic on Lakewood Boulevard, is located on the northeast corner of the intersection. Eastbound traffic on Imperial Highway is controlled by one signal of the same type conventionally mounted on a post on the southeast corner and the signal controlling the westbound traffic of Imperial Highway is located on the northwest corner of the intersection. On the last named corner of the intersection is an orange grove which interferes with observation and

renders the corner "blind" to southbound drivers as to traffic approaching from the west on Imperial Highway.

At 1:30 o'clock on the afternoon of May 5, 1945, described by witnesses as a day "clear and dry," defendant, employed by California Institute of Technology, driving a Navy truck, was traveling in a southern direction on Lakewood Boulevard. The victims were traveling in a Chevrolet sedan automobile on Imperial Highway in an easterly direction. In the intersection a collision ensued, as a result of which two men riding in the sedan were fatally injured.

The principal witness for the prosecution was Stanley B. LaRue, a Lieutenant in the United States Navy, who testified that defendant was driving his truck in the righthand lane going south on Lakewood Boulevard. The witness was driving in the lefthand lane going south, approximately 50 feet behind defendant's truck, which he had been following in the same relative position for several blocks. Both vehicles were traveling between 35 and 40 miles per hour.

Lieutenant LaRue testified that when he was some 200 yards distant from the intersection he observed the traffic signal controlling southbound traffic flash "amber"; that when he was 100 yards away the light turned "red." That he slowed his vehicle down to comply with the signal by stopping, but that defendant's truck, without slackening its speed, proceeded into the intersection. That the signal light was "red" when the collision occurred, and that it was not until some fifteen seconds had elapsed after the impact that the light changed to "green."

Mrs. Mary I. LaRue, riding with her husband, corroborated his testimony as to the speed of the vehicles, the relative position of their vehicle and that of the defendant, and the fact that the signal was "red" for southbound traffic at the time defendant's truck entered the intersection.

Some further corroboration concerning the color of the signal light at the time the truck entered the intersection, may be inferentially drawn from the testimony of Mrs. Pauline Beagley, wife of one of the victims and who was riding with him. She testified that, at the time the automobile in which she was riding entered the intersection, the traffic signal controlling eastbound traffic on Imperial Highway was "green." And, since the signals are synchronized, it could be inferred that the signal for southbound traffic on Lakewood Boulevard

was "red." Two highway patrolmen testified they observed that the signals were functioning properly when they investigated the accident shortly after it occurred.

The fatal collision occurred in the southwest quarter of the intersection, following which the defendant's truck continued on to a point on Lakewood Boulevard 80 feet beyond the intersection, where it overturned, while the Chevrolet sedan came to rest on the east curb of Lakewood Boulevard, somewhat south of the intersection.

■ Defendant's testimony, and that of his assistant who was riding with him, is squarely contradictory to that of the foregoing eyewitnesses. However, under familiar and long recognized rules of law, it is established that the function of an appellate tribunal is not to retry the case or to determine the credibility of witnesses. As was said by this court in *People* v. *Ogden,* 41 Cal.App.2d 447, 455 [107 P.2d 50] : "An appellate tribunal cannot disturb the findings of the triers of fact unless it be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence, circumstantial or otherwise, to support the conclusion reached in the lower court. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778] ; *People* v. *Gidney,* 10 Cal.2d 138, 143, 144 [73 P.2d 1186]. No such showing is made in the instant case. True, there is an irreconcilable conflict between the testimony of the prosecutrix and that given by the defendant. However, our appellate jurisdiction extends only to questions of law, and where the evidence which militates against the defendant, considered by itself and without regard to conflicting evidence, is sufficient to support the verdict, the question ceases to be one of law—of which alone this court has jurisdiction —and becomes one of fact upon which the decision of the jury and the trial court is final and conclusive."

■ Appellant contends that the trial court abused its discretion in permitting the prosecution to read into evidence, over appellant's objection, the testimony of the aforesaid witness Lieutenant Stanley B. LaRue given at the preliminary examination, on the ground that such witness could not with due diligence be found within the State of California. This contention is without merit. At the trial it was established without contradiction that the witness was a lieutenant in the United States Navy and was stationed in Hawaii; that he had been out of the State of California for four months preceding the trial, during which period he reg-

ularly corresponded with his wife by mail from Hawaii. We are therefore convinced that it was "satisfactorily shown" not only that the witness could not be found within the state, but that he was actually residing without the state. An examination by us of the record also shows that at the preliminary examination this witness was subjected to an exhaustive cross-examination by defendant's counsel and was also further interrogated on recross-examination. Furthermore, as to this witness, there was no showing that the testimony in question would have been any different if the absent witness had been present at the trial, nor was there any showing that evidence of an impeaching character had materialized since the preliminary examination (*People* v. *Bernstein,* 70 Cal. App.2d 462, 469 [161 P.2d 381]; *People* v. *Collup,* 27 Cal. 2d 829, 839 [167 P.2d 714]). Under the facts here present it cannot be held that any constitutional rights of appellant were invaded or that the trial court abused its discretion by admitting in evidence the former testimony of the absent witness.

Appellant's main ground of appeal is thus stated by him:

". . . in crimes of the nature of the one involved in the case at bar, intent is a positively and necessarily material element to be proven before The People are entitled to a conviction. (Section 20, *Pen. Code; People* v. *Pociask,* 14 Cal.2d 679, at 683 [96 P.2d 788].) However, we are fully aware of the fact that intent, like any other element of the corpus delicti, may be proven by circumstantial evidence; but we hasten to say that, when circumstantial evidence is used to prove the commission of a crime or any part of the corpus delicti, then the rule enunciated by the Supreme Court in *People* v. *Lamson,* 1 Cal.2d 648, at 661 [36 P.2d 361], immediately comes into play.

"The point we make is that the intention of a malignant and abandoned heart was not proven by The People in this action in such a manner that the proof was consistent only with the idea of guilt and inconsistent with any other hypothesis tending toward innocence."

Concerning the case of *People* v. *Lamson* relied upon by appellant, the Supreme Court in *People* v. *Newland,* 15 Cal. 2d 678, 681 [104 P.2d 778], had this to say:

"As to the Lamson case, it may be said that nothing was decided in that case except that the judgment be reversed.

On no other question involved on the appeal was there a concurrence of a majority of the members of the court.''

In support of his claim that under the provisions of section 20 of the Penal Code reading, ''In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence'', the intent of the defendant becomes material and that proof of such intent in the instant case, resting on circumstantial evidence alone, such evidence not being consistent only with the hypothesis of guilt and inconsistent with any other rational hypothesis, the guilt of the defendant was not established, appellant relies on the case of *People* v. *Pociask, supra,* page 683. However, the evidence in the case at bar, insofar as the ''circumstances connected with the offense'' (Pen. Code, § 21) is concerned, is direct and not circumstantial. In the case of *People* v. *Pociask, supra,* cited by appellant, the court was concerned with a prosecution under section 500 of the Vehicle Code, as it then existed (Stats. 1935, p. 2141), for negligent homicide. In that case the question for decision was the meaning of the words ''driving in a negligent manner'' as used in the statute. The case has no application to a prosecution such as the one before us, for involuntary manslaughter.

▪ In a prosecution for involuntary manslaughter the intent of the defendant is not material because the offense charged is the taking of life in certain unlawful ways without any intention of doing so. As was said in *People* v. *Miller,* 114 Cal.App. 293, 300, 301 [299 P. 742], ''. . . the killing is involuntary manslaughter 'where death occurred, without malice or any intent to kill, but in the commission of an unlawful act not amounting to a felony'.'' For additional authority that in a case of involuntary manslaughter the question of intent is immaterial, see *People* v. *Schmah,* 62 Cal. App. 192, 196 [216 P. 624].

▪ Section 476 of the Vehicle Code prescribes rules governing the various types of traffic signals. It further directs that no person shall disobey such signal regulatory devices except in certain instances not here material. Section 450 of the same code makes any such violation a misdemeanor. These provisions of the Vehicle Code being designed to prevent injury to the person, and there being substantial evidence to support the finding of the trial court that the defendant was guilty of such violation, as a result of which death ensued, it must be held that he committed an unlawful act within the

meaning of Penal Code, section 192, and that he is, therefore, guilty of involuntary manslaughter. (*People* v. *Mitchell,* 27 Cal.2d 678, 683 [166 P.2d 10].) Contrary to appellant's contention, the testimony establishing that he drove through the intersection against a "red" traffic signal and collided with the eastbound vehicle containing the deceased victims, is direct and not circumstantial, as evidenced by the testimony of the witness Lieutenant LaRue and his wife hereinbefore narrated. And even though the evidence was circumstantial nevertheless, if "the circumstances reasonably justified the conclusion of the jury expressed in their verdict, and even though this court were of the opinion that such circumstances might be reasonably reconciled with the innocence of defendant, such fact does not warrant interference with the determination of the jury" (*People* v. *Perkins,* 8 Cal.2d 502, 511 [66 P.2d 631]).

Appellant suggests that "the record would indicate . . . that the defendant is guilty of an unavoidable accident on his part with the further possibility that the Decedents were the proximate causes of their own deaths in their own negligence when they entered the intersection"; and again appellant urges ". . . It may even possibly be that the victims themselves in the manner in which they entered the intersection were not using the caution and prudence of ordinarily careful people, particularly at a blind intersection."

This argument is unavailing for two reasons. In the first place, there is nothing in the record to support appellant's implication that the driver of the victims' vehicle was guilty of negligence; and, secondly, although contributory negligence of a decedent may be available as a defense in an action to recover damages for a private injury resulting from such death, it is never a defense or excuse for crime (*People* v. *McKee,* 80 Cal.App. 200, 205, 206 [251 P. 675]; *People* v. *Leutholtz,* 102 Cal.App. 493, 498, 499 [283 P. 292]).

For the foregoing reasons, the judgments are and each is affirmed.

York, P. J., and Doran, J., concurred.