[Crim. No. 1828. Fourth Dist. Feb. 15, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. NATIVIDAD VILLEGAS, Defendant and Appellant.

John A. Morrow, Jr., Public Defender, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant was convicted in two counts charging that he sold narcotics, in violation of Health and Safety Code, section 11501. The sole contention on the appeal from the judgment is that the evidence is insufficient to support the conviction.

The chief witness for the prosecution at the trial was Agent David Fuentes, a state narcotics investigator. Agent Fuentes testified that on September 28, 1961, he was working as an undercover investigator in Imperial County. On that day, he entered a pool hall in El Centro where he saw defendant with a man named Steve Silvas, who was also cooperating with law enforcement officers. Fuentes had never talked to defendant before, but he had seen him on the streets of Brawley several times. During the ensuing conversation, defendant asked the officer if he had "come to pick up." Fuentes replied, "You know that is all I come after." Defendant asked, "How much stuff are you picking up?" Fuentes said, "A half piece, if I can get next to the right people." Defendant replied, "We are ready to deal, man. Let me call my partner." Fuentes testified that he is familiar with the jargon of narcotics traffickers, and that "pick up" means to purchase narcotics, "stuff" means narcotics, and a "half piece" means a half ounce of narcotics.

At that time, Efrin Rubio, who was tried and convicted with defendant, but is not appealing, joined the group. Defendant, Rubio, Silvas, and Agent Fuentes entered the latter's automobile and drove to Calexico. During the journey, Fuentes and defendant discussed the proposed purchase of narcotics. Fuentes professed to be unwilling to trust Rubio and defendant with any money until the narcotics were ready for immediate delivery. Rubio and defendant claimed that they did not have sufficient money to buy the narcotics in Mexico, and they said that Fuentes would have to give them money before they went to Mexico to get the narcotics. Finally, Fuentes said that he would attempt to purchase a small amount of narcotics from defendant and Rubio and if the sale was successfully completed he would purchase a larger amount. Rubio and defendant agreed. Fuentes gave the money to defendant, who gave it to Rubio. Rubio left the car. Defendant assured Fuentes that Rubio would return with the narcotics.

While they waited, defendant mentioned that he was well known in Calexico and he then concealed himself by lying down on the rear seat. Then defendant suggested that they drive to another area and this was done. Later, they returned to the place where Rubio had been let off and he reappeared. Shortly thereafter, Rubio gave Agent Fuentes a quantity of heroin. Later, while Fuentes was driving defendant to his home, they made arrangements to meet the next day and complete the purchase of the larger amount of narcotics.

The next day, according to this prearranged plan, Fuentes picked up Rubio and defendant. Again, they went to Calexico and negotiated about the price of the narcotics. Rubio told Fuentes that the price would be $190 and defendant said that they should hurry up and agree on a price. Defendant indicated that he preferred to conduct these transactions without haggling over price. Fuentes gave Rubio $190 and Rubio left. While they were waiting, defendant told Fuentes that he got nervous while waiting for a deal like this. Rubio returned about 40 minutes later and said that he didn't know whether or not he had been followed. The group then drove to Rubio's home, where he turned over a quantity of heroin to Fuentes. Later, while the officer was driving defendant to his home, defendant said that next time they should leave Rubio out of it and deal only with each other. On both days, while Agent Fuentes was with defendant and Rubio, they were also under the covert surveillance of various law enforcement officers.

Defendant and Rubio testified that Agent Fuentes had all his dealings with Rubio and that defendant was a silent witness to all these transactions. They denied that on September 28 Fuentes handed the money to defendant. Defendant claimed that he played no part in the commission of the offenses.

Defendant says that the evidence is insufficient to show that he is guilty of the offense charged. He argues that the evidence indicates that he was merely present when the alleged offense was committed; that he did not approve or disapprove of it; and that he did not aid or assist in any manner in the commission of the offense. He points out that in the case of *People* v. *Hill*, 77 Cal.App.2d 287 [175 P.2d 45], it was held that mere presence at the scene of the offense is insufficient to establish guilt.

The rules by which we must evaluate questions as to

the sufficiency of the evidence are stated as follows in *People v. Barnett,* 77 Cal.App.2d 299, 302 [175 P.2d 237] :

". . . the function of an appellate tribunal is not to retry the case or to determine the credibility of witnesses. . . . 'An appellate tribunal cannot disturb the findings of the triers of fact unless it be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence, circumstantial or otherwise, to support the conclusion reached in the lower court. . . .' "

 Tested by these rules, the evidence was sufficient to establish defendant's guilt of the offenses charged. The testimony of Agent Fuentes warranted the jury's finding that defendant was an active participant in the sale and not merely a passive onlooker. He told the agent that Rubio was his partner; he participated in the negotiations concerning the price to be paid and he stayed with the customer while Rubio went to Mexico to obtain the narcotics. In this, his actions were not unlike those of a lookout at the scene of a robbery, who stands by to see that there is no unforeseen danger approaching while his partners actively carry forward the criminal enterprise. In the case of *People* v. *Hill, supra,* 77 Cal.App.2d 287, 294, the court said : "Of course it is elemental that one who keeps watch during the commission of the crime to facilitate the escape of the criminal is guilty as a principal."

Here, the evidence of defendant's cooperation and assistance in the crime is clear. The jury was not required to believe the testimony of defendant and Rubio. Their testimony merely created a conflict in the evidence which the jury resolved against the defendant. In several cases, upon similar testimony, it has been held that the evidence was sufficient. (*People* v. *Perez,* 162 Cal.App.2d 650 [328 P.2d 512] ; *People* v. *Justice,* 167 Cal.App.2d 616 [334 P.2d 1031].)

Judgment affirmed.

Coughlin, J., and Monroe, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.