## Held v. Commonwealth.

(Decided February 7, 1919.)

### Appeal from Daviess Circuit Court.

1. Homicide—Involuntary Manslaughter—Instructions.—Where one accused of manslaughter is convicted of involuntary manslaughter, the instruction upon voluntary manslaughter, even if erroneous, is not prejudicial to the accused.

2. Homicide—Involuntary Manslaughter—Instructions.—The mere fact that two different states of case described in the evidence, which separately constitute involuntary manslaughter are presented separately in two instructions is not prejudicial error, although it would have been better practice to combine the two into one instruction.

3. Homicide—Involuntary Manslaughter—Instructions.—Involuntary manslaughter at common law is where death unintentionally results to another from the doing of an unlawful act, or the doing of a lawful act in an unlawful manner, and not having been treated of by statute, is cognizable and punishable as a common law offense in this State.

4. Criminal Law—Negligence in Use of Dangerous Agency.—Carelessness or negligence in the use of an agency necessarily dangerous to the life, limb or property of another, in close proximity thereto, is culpable.

5. Criminal Law—Careless Operation of Automobile—Negligence.— An automobile when being operated upon a public street of a city within the business district during business hours, is an agency necessarily dangerous to the life, limb and property of others, whose presence at such time and place must be anticipated; and its careless operation under such circumstances is culpable negligence.

6. Homicide—Involuntary Manslaughter—Instructions.—An instruction submitting as an element of involuntary manslaughter, carelessness or negligence in the operation of an automobile upon a public street of a city within the business district and during business hours, is not erroneous but proper.

CLEMENTS & CLEMENTS and LOUIS I. IGLEHEART for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clarke—Affirming.

The appellant is appealing from a judgment convicting him of involuntary manslaughter and fixing his punishment at confinement for twelve months in jail and the payment of a fine of $500.00 for driving or forcing an automobile over or against Ernest Combs, a fifteen year old boy, early in the afternoon of Monday, April 8, 1917, upon a public street in the city of Owensboro, thereby inflicting injuries from which the latter died within a few hours thereafter.

The errors assigned are the trial court did not instruct the jury upon the whole law applicable to the case, and incorrectly stated the law in instructions given.

1.  That the court did not, in the instructions given, cover the whole of the law applicable is upon the theory that there was evidence tending to prove that appellant had stopped his car before it struck deceased, and it was forced upon or against him by being struck by another automobile operated by one Miley Baskett, but the evidence does not sustain such a contention, as appellant himself testified that Baskett was following closely behind him just before he struck deceased, and that "Baskett's car came up from the rear and brushed my front fender and threw me on over." He was then asked and answered the following: "Q. Did it strike your running gear? A. No, I don't think it did. I think it struck the fender and brushed as he went past me. I couldn't tell whether it was the front or the rear of his car. Q. You could not tell whether it swiped from front or behind? A. No, sir. Q. And you had already struck the boy at that time, had you not? A. Yes, sir; before Miley struck me, and when Miley struck me it pushed me right hard and I couldn't stop. Q. It pushed you over the boy? A. I don't know about that. I don't know whether he did or not."

Baskett did not testify, and no witness testified in contradiction of appellant's testimony upon this question, except there is some confusion as to whether Baskett's car in passing struck the front or rear fender of appellant's car.

2.  The first instruction, upon voluntary manslaughter, is severely criticised, and it is not in such form that we would care to approve it as a guide for future

trials, although it seems to be free from substantial error; but however that may be, it is not pertinently involved upon this appeal, since appellant was not convicted under it, but for a lesser offense, and he was not prejudiced thereby, regardless of whether it correctly submitted the graver offense, so we shall proceed to a consideration of instructions 2 and 3, both of which treat of involuntary manslaughter, of which appellant was convicted, to see if they or either of them contain prejudicial error.

They are as follows:

2. "If the jury believe from the evidence, that the accused, Browning Held, did not intend to force or drive said automobile in, upon, or against Ernest Combs or in a manner reasonably calculated to endanger the lives of persons then and there upon the highway, and that at such time the accused believed, and had reasonable grounds to believe, that there was no danger in driving said automobile in the manner he then drove same, but further believe from the evidence, to the exclusion of a reasonable doubt, that in this county, and within twelve months next before the finding of this indictment, the defendant did drive or force said automobile in a careless or reckless manner, in, upon or against said Ernest Combs and that the killing of said Ernest Combs resulted from such carelessness, forcing or driving of said automobile by the accused (if such there was) then the jury should find the defendant guilty of involuntary manslaughter, an offense included in the indictment, and fix his punishment by imprisonment in the county jail in the reasonable discretion of the jury, or by fine in their reasonable discretion, or both by fine and imprisonment in the county jail in their reasonable discretion, and the jury may say in their verdict that said fine or imprisonment, or both, shall be at hard labor, in their reasonable discretion.

3. "If the jury believe from the evidence, to the exclusion of a reasonable doubt, that at the time the automobile in question struck said Ernest Combs (if it did so) the same was proceeding upon a street or highway of the city of Owensboro, Kentucky, at a speed greater than is reasonable and proper, having regard to the traffic and use of the highway or so as to endanger the

life or limb or injure the property of another person, then such speed was unlawful, and if the jury believe further from the evidence, to the exclusion of a reasonable doubt, that said automobile struck and killed said Ernest Combs or caused him to sustain certain mortal hurts, wounds, or fractures as described in the foregoing instruction while going at such speed, from which said Earnest Combs did die within a day thereafter, the jury should find the defendant guilty of involuntary man-slaughter, an offense included in the indictment, and fix his punishment as provided in instruction No. 2, unless they further believe from the evidence, to the exclusion of every reasonable doubt, that said automobile was being driven as described in instruction No. 1, in which event they will find as directed in instruction No. 1.''

Obviously, it would have been much better, both from a standpoint of artful preparation and of easy comprehension, had the two instructions been combined, but the mere fact that the different conditions described in the evidence which separately made the homicide involuntary manslaughter, were separately presented in two rather than one instruction, if correctly set forth, certainly would not be prejudicial error since unless defendant's conviction was authorized by the jury upon proof of facts not amounting to the offense of involuntary manslaughter, he has no valid cause for complaint under our code, so far as these two instructions are concerned.

It will be seen that instruction No. 2 makes of the homicide involuntary manslaughter, if committed unintentially, by the careless operation of an automobile upon a highway, while instruction No. 3 states that the homicide was also involuntary manslaughter, if it resulted from defendant's operation of an automobile upon a street in the city of Owensboro, ''at a speed greater than was reasonable and proper, having regard to the traffic and use of the highway or so as to endanger the life or limb or injure the property of another person,'' such rate of speed at that place being declared unlawful.

It is therefore apparent that the court was attempting to present by separate instructions the two elements always recognized in common law definitions of involuntary manslaughter; the one, unintentional killing resulting from the doing of an unlawful act, and the other

where death unintentionally results from doing a lawful act in an unlawful manner; the latter of the two instructions employs the very language of subsection 9, section 2739 of Kentucky Statutes, in describing what is an unlawful rate of speed in the operation of an automobile upon a public highway within the city, and had this instruction embodied the idea of unintentional killing, which it does not, it would have correctly described involuntary manslaughter resulting from the doing of an unlawful act, and the jury were permitted to find the defendant guilty of involuntary manslaughter, if he caused the death of Ernest Combs, while doing an unlawful act, whether intentional or unintentional, evidently by an oversight, of which the defendant can not complain, because the instruction was thereby made much more favorable to him than was proper.

It is therefore apparent instruction No. 3 contained no prejudicial error.

While instruction No. 2 seems to us to unnecessarily qualify the defendant's intention by the clause, "and that at such time the accused believed, and had reasonable grounds to believe, that there was no danger in driving said automobile in the manner he then drove same," but as this did not affect the instruction prejudicially to the defendant, but rather beneficially, he can not complain thereof, and there is not in the whole instruction, so far as we can discern, anything prejudicial to defendant's substantial rights, if as a matter of law the careless operation of an automobile near the middle of the day upon a public street, and within the business district of a city of the size of Owensboro, amounts to the doing of a lawful act in an unlawful manner, within the meaning of the ordinarily accepted definition of involuntary manslaughter. This is, we apprehend, the only close question presented by either of the two instructions now under consideration.

This is the first case that has reached this court, involving criminal liability for homicide resulting from the operation of an automobile, but the principles of law involved are thoroughly settled in this jurisdiction, and there can be no doubt that under the decisions of this court, carelessness or negligence or recklessness in the performance of a lawful act, which results in the death of another, is always unlawful and criminal if the

agency employed was at the time and place of a character that its negligent or reckless use was necessarily dangerous to human life or limb or property; and this dangerous character of the agency employed has been accepted in this state in a long line of decisions, as sufficient to render a reckless or negligent or careless use criminal, upon the theory, no doubt, that a want of ordinary care in the use of such an instrumentality in the presence of others or upon a crowded thoroughfare in a city or where others were naturally expected to be, is gross negligence, and it is quite apparent that such a position is logically correct, for there are many instrumentalities of death with reference to which a want of ordinary care in proximity to others is carelessness of the grossest kind. So it may be conceded that at common law, culpable negligence in a criminal prosecution had to be of the quality known as gross negligence, and it is true no doubt that any negligence less than gross negligence in the performance of a lawful act, would be insufficient to make of an unintentional killing, the offense of involuntary manslaughter (see notes to 90 A. S. R. 571; 30 L. R. A. (N. S.) 458; 33 L R. A. (N. S.) 408 and 135 A. S. R. 293), but it is not at all necessary that to attain this result, it is necessary in all cases to refer to the culpable carelessness or negligence, as gross negligence, because where in an instruction the agency and circumstances surrounding the homicide are described, the same result is obtained by treating as culpable the *careless* use of a necessarily dangerous instrumentality in a public place or in such close proximity to others, as to endanger their lives. So we find in the case of York v. Comlth., 82 Ky. 361, it was held, as a matter of law, that an unintentional killing which resulted from the *careless* pointing of a loaded and cocked shot gun at another, was at the least *voluntary* manslaughter, and that upon such evidence there was no evidence whatever upon which to base an involuntary manslaughter charge.

In Chrystal v. Comlth., 9 Bush 669, this court quoted with approval from 2 Wharton American Criminal Law, sec. 1004:

"Whatever may be the difference as to the degrees of homicide, a party whose negligence causes the death of another is in like manner responsible, whether the business in which he was engaged was legal or illegal.

. . . But even where the business is perfectly legal, negligence in the discharge of it when producing homicide is manslaughter;'' but suggested as a necessary qualification thereof:

"To this general rule there may be exceptions, as where an act, careless in itself, is committed with fatal results under circumstances or at a place from which it might be reasonably inferred that no injury could happen from the carelessness of the party acting. But this is not of that exceptional class of cases; and, considering the instruction complained of, as we must, with reference to its application to the facts, we must conclude that the court did not err in giving it to the jury.''

In that case, the court approved an instruction upon voluntary manslaughter based upon the "recklessly careless" use of a loaded pistol in a room where others were present, and affirmed a conviction thereunder carrying with it confinement in the penitentiary, from which it is clear that if a "recklessly careless" use of a loaded pistol amounts to voluntary manslaughter, a want of ordinary care in its use in the presence of others liable to kill, and which does kill, would necessarily be involuntary manslaughter. See also to the same effect Sparks v. Comlth., 3 Bush 111; Smith v. Comlth., 93 Ky. 320.

So the remaining question to be determined, and this is the only new feature presented by this case, is whether or not the negligent operation of an automobile upon a public street in the business section of the city of Owensboro, near the middle of the day, was such careless use of a dangerous agency at a time and place, which, as a matter of law, may be such want of care as under the circumstances, to amount to gross or culpable negligence. If so, then all of the authorities in this state at least, where the common law still applies to such offenses as this, which have not been regulated by statute, are to the effect that such carelessness is culpable negligence involving criminality.

The evidence shows that the place of the accident on West Fifth street, between St. Ann and Frederica streets, in Owensboro, is near the heart of the business section, and within less than a square and upon the same street with the postoffice, and Owensboro is, we know, judicially, a city of the third class, with a population of

more than eight thousand people. The testimony as to the rate of speed at which defendant was operating his automobile just before it struck the deceased, for the Commonwealth is, that he was going at a rate of from thirty to forty or fifty miles an hour, and racing with the automobile following him, while the defendant in his own behalf, testifies that as he approached St. Ann street, out of which deceased came riding a bicycle, he was going at a rate of about twenty-five miles an hour; so there can be no question that the court properly presented to the jury in the third instruction the question for consideration and determination, of whether or not at the time and place described in the evidence, defendant was operating his car unlawfully, and if so, authorized the jury to find him guilty of involuntary manslaughter, if the killing, though unintentional, resulted from his doing this unlawful act. It is also shown in the proof for the Commonwealth, that the defendant at the time his car struck the deceased, was within four or five feet of the curb on the right hand side of the street, where the deceased had a right to be, and where the defendant did not have a right to be, as it was his duty to go round to the left of the defendant. It was shown for the defendant, however, that deceased became confused and turned first one way and then the other, and the defendant attempted to avoid striking him by turning in first one direction and then the other; and while the contributory negligence, if any, of the deceased is not available to the defendant as a defense, this evidence was relevant and competent upon the question of whether or not the defendant, in the operation of his car, was negligent and thereby unintentionally committed the homicide, without regard to the rate of speed at which he was proceeding, and this was evidence sufficient to submit to the jury the question of whether or not the death was unintentional, but the result of negligence or carelessness in doing a lawful act; and as we have seen under the circumstances of this case, the place and time where the accident occurred and the agency from which it resulted, were of such character as made it proper for the court to submit to the jury the question of negligence as an element of the offense, because in our judgment, a want of ordinary care in the operation of an automobile within the business district of a city near the noon hour,

where the presence of others upon the highway must be anticipated, is such use of an agency dangerous to life, limb and property of others, as makes any negligence which results in the death of another, unlawful and criminal. We therefore do not find in either of these two instructions any prejudicial error.

Complaint is also made of the 4th instruction given:

"4. An 'accident' is an unusual and unexpected event happening without negligence, and if the jury believe from all the evidence in this case, that the killing of Ernest Combs by defendant (if such there was), referred to in the indictment and instructions herein, was the result of such an accident, or of an accident occurring under circumstances or conditions other than as set forth in instructions Nos. 1 and 2, they should find the defendant not guilty."

The complaint is that the court did not refer to instruction No. 3 in the latter part of the instruction "or of an accident occurring under circumstances or conditions other than are set forth in instructions No. 1 or No. 2."

The whole of this clause is superfluous, since the former part of the instruction excuses all accidents such as are therein defined and without further qualification excluded necessarily the states of case covered by instructions Nos. 1, 2 and 3, so the omission was without effect, and we do not think could have in any way influenced the verdict.

For the reasons indicated the judgment is affirmed.