PHILLIPS *v.* STATE.

4245                                                        161 S. W. 2d 747

Opinion delivered April 27, 1942.

*Claude F. Cooper* and *T. J. Crowder,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

SMITH, J. Appellant was found guilty of involuntary manslaughter and given a sentence of one year in the penitentiary, from which judgment is this appeal.

Appellant was jointly indicted with three other persons who were occupants of a car which he was driving at the time the homicide was committed; but at the conclusion of the introduction of the testimony the case was dismissed as to all the defendants except appellant.

The indictment alleged that the occupants of the car "did unlawfully, feloniously, wilfully, culpably and negligently, without due caution, care and circumspection, drive his car into and over one Jewel Faulkenberry, . . .," thereby killing the said Faulkenberry.

The indictment sufficiently charged a violation of § 2982, Pope's Digest, which is our involuntary man-

slaughter statute. The trial judge was under the apprehension that a violation of § 48 of act 300 of the Acts of 1937, p. 1103, now appearing as § 6706, Pope's Digest, was charged; but withdrew those instructions and submitted the case under § 2982, Pope's Digest.

This action of the court is assigned as error, it being insisted that § 6706, Pope's Digest, supersedes § 2982, Pope's Digest, in so far as it relates to homicides in driving automobiles; and it is further insisted that the testimony is insufficient to sustain a conviction under § 2982, Pope's Digest.

Considering first the last stated contention, it may be said that none of the defendants testified, and no other person saw the automobile strike Faulkenberry, a child twelve years old, and the state's case depended upon proof of statements made by appellant subsequent to the collision.

A deputy sheriff testified that it was not known who had killed the child, but that he arrested appellant as a suspect. Appellant first stated that his wife was driving the car, but after he had been placed in jail, he admitted that he, and not his wife, was driving the car when the collision occurred, and he detailed the circumstances of the accident as follows. He was driving on highway 40 from Osceola, and he met a car the lights of which were on, and he could not see very well, and that the boy darted out and he could not tell whether the boy was in front or behind the car that was approaching from the opposite direction, and that he hit the boy with his car. He slowed down and started to stop, when someone in the car told him he was in a white settlement and that he had better drive on or they would get hurt; that he did not report the accident because he had never heard any more about it and figured the boy was not hurt very badly. Appellant is a colored man and the child killed was a white boy, but the accident did not occur in a village or "settlement," as there was only one house in that neighborhood. Appellant accompanied the deputy sheriff to the scene of the killing, and other officers found evidence of the collision at that point. Blood stains on the highway were found twenty feet from

the place where the body was found, and the clothes worn by the boy were exhibited to the jury. The child's head was crushed.

We think it fairly inferable that the occupants of the car were drinking, if not intoxicated, and that fact would be clearly shown if we might consider the proof of statements made by a woman who was in the car, but after a verdict had been directed in her favor the testimony as to her admission was excluded from the jury. However, we think the testimony supports the finding that appellant was not driving the car with "due caution and circumspection," as that term will be hereinafter defined.

As has been said, none of the occupants of the car testified, but we think it fairly inferable from appellant's own admissions and the circumstances of the case that he was driving without due caution and circumspection, and in all probability at an unlawful speed, as is evidenced by the distance the car threw the body.

Act 300 of the Acts of 1937 is a comprehensive act, consisting of 165 sections, and is entitled "An act regulating traffic on highways and defining certain crimes in the use and operation of vehicles. . . ." Article IV of this act is entitled "Accidents," and embraces §§ 36 to 47, both inclusive, of the act, and it is certain that appellant did not comply with the requirements of any of these sections. He made no inquiry as to the extent of the injury he had inflicted; and he made no report thereof; and he offered no aid to the injured party as the law required him to do. These omissions of his statutory duty, aside from his humane duty, all strongly support the inference that appellant struck the boy while driving without due caution and circumspection.

We conclude, therefore, that the testimony is sufficient to support the conviction. *Madding* v. *State,* 118 Ark. 506, 177 S. W. 410; *Nichols* v. *State,* 187 Ark. 999, 63 S. W. 2d 655.

Appellant insists, as has been said, that § 2982, Pope's Digest, in so far as it relates to a death inflicted

by the driver of an automobile, has been superseded by § 48 of act 300 of the Acts of 1937 (§ 6706, Pope's Digest).

Section 2982, Pope's Digest, reads as follows: "Involuntary manslaughter. If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and circumspection, it shall be manslaughter."

Section 48 of act 300 of 1937 (§ 6706, Pope's Digest) reads as follows: "Negligent homicide. (a) When the death of any person ensues within 1 year as a proximate result of injury received by the driving of any vehicle in reckless, wilful or wanton disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide. (b) Any person convicted of negligent homicide under the provisions of this act shall be punished by imprisonment for not more than 1 year or by fine of not less than $100 nor more than $1,000, or by both such fine and imprisonment. (c) The commissioner shall revoke the operator's or chauffeur's license of any person convicted of negligent homicide under the provisions of this act."

After defining voluntary manslaughter, the crime of involuntary manslaughter is defined in § 192 of the Penal Code of California as follows: "2. Involuntary —in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection." The similarity of this statute to § 2982, Pope's Digest, is apparent.

At the 1935 session of the General Assembly of California, an act was passed which appears as chapter 27 of the acts of that session. This is an act to establish a "Vehicle Code . . .," and our act of 1937, *supra,* may have been patterned after it, as many of the provisions of that act are identical with our act of 1937. Under the title, "Negligent Homicide," a section of the California act reads as follows: "500. Negligent Homicide. When the death of any person ensues within one year as

the proximate result of injuries caused by the driving of any vehicle in a negligent manner or in the commission of a lawful act not amounting to felony, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the state prison for not more than three years.''

In the recent case of *People* v. *Crow,* (Calif. App.) 120 P. 2d 686, it was held that these statutes of the state of California were not in conflict, and that the offenses were so separate that a verdict of acquittal of negligent homicide was not inconsistent with a subsequent verdict of conviction of manslaughter arising out of the same automobile accident, for the reason that the statute defining ''Negligent Homicide'' defines a crime different from involuntary manslaughter or any other crime defined in the Penal Code.

What effect a conviction or an acquittal in this state would have under either § 2982 or § 6706, Pope's Digest, as a bar to a prosecution under the other section is a question not requiring decision here. But we are convinced, as was the California court, that the sections are not in such conflict that the later (the Vehicle Act) repealed the former (the Penal Code).

If our act of 1937 repeals § 2982, Pope's Digest, where one had been killed by an automobile, it also repealed any other law that would apply to a homicide committed in driving an automobile; and we think the General Assembly had no such intention. It is easily conceivable that the driver of an automobile might, with deliberation and premeditation and with malice aforethought, drive over a person with the intention of killing him, in which event he would be guilty, not of involuntary manslaughter, but of murder. Of course, to make such an act murder, proof of the specific intent to kill would be required, and no degree of negligence, however gross, would suffice to make the unlawful killing murder; but if such proof were made of the specific intent to kill, it could not be said that the grade of such

a homicide had been reduced to a grade less than murder by the act of 1937.

Now, § 2982, Pope's Digest, is a criminal statute, and the phrase, "without due caution and circumspection," must be construed in that light. It means not ordinary negligence or the lack of ordinary care, which would constitute civil liability for an injury; it means criminal negligence. Many cases define the difference between ordinary negligence, upon which civil liability might be predicated, and the criminal negligence required to constitute a crime.

It is pointed out in the chapter on Automobiles, 5 Am. Jur., p. 927, where, at § 790, it is said: "Degree of Negligence Necessary. In cases dealing with homicides, resulting from negligence in operating automobiles, the decisions of the courts have stated in different terms the kind of negligence required to constitute a crime. In some of them it is said to be negligence that is 'culpable and gross'; in others, that it must be such as to show a reckless disregard of the safety of others, etc.; but all of the authorities are agreed, in the absence of statutory regulations denouncing certain acts as criminal, that in order to hold one a criminal there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue, and that, in order to sustain a conviction of criminal homicide attributable to a negligent omission of duty when engaged in a lawful act, it must be shown that a homicide was not improbable under all the facts existing at the time, and which should reasonably have had an influence and effect on the conduct of the person charged. Carelessness in driving an automobile at a speed that is unreasonable, or likely to endanger life or limb, is not necessarily criminal carelessness within the meaning of a statute making one guilty of manslaughter who causes the death of another by culpable negligence or criminal carelessness."

In defining the phrase, "Criminal Negligence," vol. 10, Words and Phrases, p. 521, there appears the following quotation from the case of *Croker* v. *State,* 197 S. E.

92, 57 Ga. App. 895: " 'Criminal negligence,' within involuntary manslaughter statutes, is something more than ordinary negligence, which would authorize recovery in a civil action, but is the reckless disregard of consequences or a needless indifference to the rights and safety of others with a reasonable foresight that injury would probably result. Code 1933, §§ 26-1006, 26-1009, 26-1010."

In the case of *Bell* v. *Commonwealth,* 107 Va. 597, 195 S. E. 675, it was said by the Supreme Court of Appeals of Virginia that "The courts and the authorities agree, in the absence of statutory regulations, that a higher degree of negligence is required to establish criminal negligence than to establish liability in a civil action. The negligence required in a criminal proceeding must be more than a lack of ordinary care and precaution. It must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life. It must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender. 99 A. L. R. 829; 5 Am. Jur. 927; *Cain* v. *State,* 55 Ga. App. 376, 190 S. E. 371."

We think the state, had it so elected, might have predicated this prosecution upon a violation of the portion of act 300 of 1937, appearing as § 6706, Pope's Digest, above quoted; but, even so, the right to prosecute under § 2982, Pope's Digest, also existed. The testimony here shows more than a lack of care which would constitute ordinary or simple negligence, but establishes criminal negligence, in that, although driving a car was a lawful act, yet it was not driven with due caution and circumspection, and the judgment of the court below must, therefore, be affirmed. It is so ordered.