492 P.2d 1349

STATE of Utah, Plaintiff and Respondent,

v.

Thomas Chester PERRY, Defendant and Appellant.

No. 12611.

Supreme Court of Utah.

Jan. 17, 1972.

Herschel Bullen, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., David S. Young, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Defendant, Thomas Chester Perry, appeals from his conviction by a jury of robbery, contending (1) variance between the complaint and the information; and (2) error in pretrial identification procedures.

The evening of December 12, 1968, two men forced their way at gunpoint into the home of David Harness in Orem, Utah. In the presence of Mr. Harness and his wife, the two men explained their plan to take money from the Allen Super Save Market there in Orem, of which Mr. Harness was the manager. One of the men would stay with Mrs. Harness and her two children to keep them hostage; if any difficulty developed at the store, a signal by walkie-

**50**

talkie would be given, whereupon Mrs. Harness and the children were to be killed. Under this threat, Mr. Harness went with one of the men to the store. The robber explained the situation to the other employees. These employees, Clark Naylor, Floyd and Ruth Hallsey, and Dean Olsen, offered no resistance but looked on while Mr. Harness took the money from the safe, handed it over to the robber and left with him. The latter forced Mr. Harness to take him back to Harness's home and the two men fled with the money.

Various pictures of persons, including persons suspected of the robbery, were shown at separate times to five of the witnesses to the events described above. It does not appear that there was anything about the pictures to suggest that any particular person was to be identified. Nor were pictures of any one individual repeated. Each one of those witnesses identified the defendant Perry from his picture as the perpetrator of the robbery. We have some difficulty in seeing why this further thing was done, and do not commend its propriety, but after the identification, the witnesses were told that the man so identified had been convicted of a similar crime in California.

At the preliminary hearing the defendant, wearing handcuffs, was taken by police officers into the courtroom, where the handcuffs were removed. The witnesses, who had recognized the defendant from the pictures, identified him at the preliminary hearing. At the trial the defendant made appropriate motions to suppress testimony as to identification, and to dismiss the complaint.

■ Defendant's contention of fatal variance between the original complaint filed in the city court, and the information filed in the district court after he was bound over, is based upon the difference in the emphasized portions of those documents. The complaint stated:

> The said Thomas Chester Perry, at the time and place aforesaid, did then and there unlawfully, wilfully, and feloniously and with force of arms, *take from the presence of David Harness, and from the safe of Allen's Super Save Market* . . the sum of approximately $5000.00 in cash and $5000.00 in stamped checks. . . .

The information, in contrast, stated:

> The said Thomas Chester Perry did, with force of arms, take personal property *from the possession of David Harness,* against his will.

Defendant's argument is that he was bound over on a charge of having robbed Allen's Super Save Market, whereas the information charged that he committed the offense against David Harness. The fallacy in his contention is shown by an examination of the so-called variance in the light of the

statute, Sec. 76–51–1, U.C.A.1953, which defines robbery as:

> . . . the felonious taking of personal property in the *possession of another from his person, or immediate presence,* against his will, accomplished by means of force or fear.

The essential aspect of both the complaint and the information in the particular complained of is that the defendant took the money from the presence or possession of David Harness. The validity of that essential allegation was not impaired by the addition of the further fact that it was taken "from the safe of Allen's Super Save Market." The information upon which the defendant was tried was adequate to inform him of the time, place, and nature of the offense charged against him.[1] The defendant was represented by competent counsel. If he thought the information did not sufficiently inform him of the essential facts he could have requested a bill of particulars.[2] Accordingly, there was no prejudicial error with respect to the complaint and information.

■ We are similarly not persuaded that the trial court committed error in its refusal to suppress the testimony of the witnesses as to identification of the defendant. We recognize that caution must be observed to see that injustice does not result from the use of methods which unfairly focus attention upon a particular suspect to influence the witnesses in their identification. On the other hand, peace officers should not be unduly hampered in legitimate attempts to investigate crimes and to seek out and identify those who have committed them.

■ When such a question is raised it should not depend on whether the procedures followed comply with a formula designed for some other case and extrapolated to cover all possible situations. But the circumstances of the individual case should be scrutinized carefully by the trial court to see whether in the identification procedures there was anything done which should be regarded as so suggestive or persuasive that there is a reasonable likelihood that the identification was not a genuine product of the knowledge and recollection of the witness, but was something so distorted or tainted that in fairness and justness the guilt or innocence of an accused should not be allowed to be tested thereby.[3] This is something which because of his recognized prerogatives and advantaged position with respect to the trial, it is primarily the responsibility of the trial court to make the determination, which should not be disturbed unless it appears clearly that he was in error.

---

1. See Sec. 77–21–8, U.C.A.1953.

2. Sec. 77–21–9, U.C.A.1953, so provides.

3. See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247.

It is obvious that there are situations where the police cannot gather in individuals for line-ups. The use of pictures in the manner here employed, where the victims and witnesses were shown a number of pictures, but without suggestion as to identification, to see if they could pick out the perpetrator of the crime, is one which has long been employed in what we think is a practical and legitimate method of searching out those suspected of crime. Inasmuch as the defendant was not present and therefore not personally involved in the picture-viewing procedure, we do not see how there was any invasion of his rights, nor how he would have any standing to complain about it unless there was some unfairness practiced from which there would be a likelihood of a mistaken identification.[4] Whatever is done in that regard is of course part of the evidence, to be considered by the court in making his rulings, and by the jury in judging the credibility of the testimony. This includes whatever may be brought out by cross-examination, and by the arguments of counsel appealing to the sense of justice of the jurors as to whether there was any undue suggestion or unfairness. No such circumstance was shown here.

In reference to the defendant's being brought into court with handcuffs on: this is also a necessary precaution. This would not seem to have any more effect upon the witnesses' identification of the defendant than would the usual sitting at counsel table. Moreover, here the witnesses had previously identified him. From the facts that each of them had picked him out from among the various pictures shown, and continued to identify him at the preliminary hearing and the trial, we are not convinced that any injustice has been done, nor that there has been any error which would justify a reversal of the conviction. (All emphasis added.)

Affirmed.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

4. Ibid. The court states: " . . . each case must be considered on its own facts, and that conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."