Michael Lawrence BARTLETT, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4655.

Supreme Court of Wyoming.

Sept. 12, 1977.

Rehearing Denied Oct. 17, 1977.

W. A. Smith, Public Defender, and Robert B. Denhardt, Asst. Public Defender, Fremont County, Lander, for appellant.

V. Frank Mendicino, Atty. Gen., and Gerald A. Stack, Deputy Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Although there are other issues, the primary question presented in this appeal is whether the "unlawful act" portion of § 6–58, W.S.1957 [1], dealing with the crime of involuntary manslaughter, was repealed by implication with the enactment of

1. Section 6–58, W.S.1957, provides:
 "Whoever unlawfully kills any human being without malice, express or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty years."

§ 31–232(a), W.S.1957, C.1967 [2], which deals with the crime of vehicular homicide. More particularly, we are asked to consider this question in the context of a case wherein the defendant was tried, convicted and sentenced on the basis of a charge of involuntary manslaughter arising from the alleged operation of a motor vehicle in excess of the posted speed limit.

We will reverse the judgment of the trial court and remand for a new trial.

On May 5, 1975, at about 4 p. m., the defendant, Michael Lawrence Bartlett, borrowed his parents' car, picked up James Viapando, and went riding around the town of Riverton, Wyoming. At about 9 p. m., they picked up Joe Marty, Jr., and Ron Chopping and drove north out of town toward Shoshoni. On their return trip to Riverton, Mr. Viapando saw the car speedometer which indicated a speed of about 100 miles per hour. Mr. Viapando told the defendant to "mellow out." There is no indication in the record that the defendant did or did not respond to this request. At approximately 9:30 p. m., the defendant's vehicle was seen heading west on West Main Street, again out of Riverton. Another motorist, Raymond Apodaca, testified that he noticed that the defendant's vehicle was "coming quite fast as compared to other cars," and that he heard the car's motor "wrapping up." Mr. Apodaca, who was heading east on West Main Street, did not notice any other cars in the general area. The defendant's vehicle was also observed, at about the same time, by Fremont County Deputy Sheriff Larry David, who testified that the Bartlett vehicle was traveling at a speed faster than the normal rate—but he could not estimate the actual speed. Deputy Sheriff David made a U-turn and pursued the defendant's vehicle, reaching a speed of 55 miles per hour at one time. The Deputy Sheriff also testified that the speed of 55 miles per hour would be safe on this street, were it not for other cars.

Near the eventual accident location, the defendant punched the car accelerator down and passed a pickup truck which was in the right-hand lane. At this point on the street there were two west-bound traffic lanes. Defendant's vehicle hit a median strip and then jerked back across the path of the pickup, coming to rest against a tree in the yard of a residence—a distance of some 490 feet from the initial point of impact with the median strip. The defendant admitted, in a statement introduced at trial, that he was going about 50 miles per hour at the time of the accident. The accident occurred on a curve which was just prior to the merging of the two west-bound lanes. The posted speed limit in this area was 35 miles per hour. Joe Marty, Jr., and Ron Chopping died as a result of the accident.

## STATUTORY CONSTRUCTION

We recently discussed and held that the part of § 6–58, supra, which states, "or by any culpable neglect or criminal carelessness" was impliedly repealed by § 31–232(a), supra. *Thomas v. State*, Wyo., 562 P.2d 1287, 1291. We noted in *Thomas* the troublesome nature of this area—and it would serve no purpose to set out those observations again. Suffice it to say that this court, in an attempt to clarify the relationship between § 6–58, supra, and § 31–232(a), supra, has been forced to travel a circuitous route. We now must return to a problem similar to, but significantly different from, that which was raised in *State v. Cantrell*, 64 Wyo. 132, 186 P.2d 539. In that case the "primary and sole issue" was whether the defendant was under the influence of intoxicating liquor when he had a motor vehicular collision with another motorist, who died as a result of the accident. In this context, and under certain principles which will be later discussed, we stated:

" . . . [I]t is plain that Section 24, Chapter 126, Laws of Wyoming 1939 did

2. Section 31–232(a), W.S.1957, C.1967, provides:

"(a) When the death of any person ensues within 1 year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide."

not repeal in toto Section 32–205, W.R.S. 1931, supra. Section 24 aforesaid fails to deal with not only the inhibition of the statute concerning voluntary manslaughter but also the ban of the law upon involuntary manslaughter 'in the commission of some unlawful act'. It is not repugnant to either of these provisions. See also *Phillips v. State,* 204 Ark. 205, 161 S.W.2d 747." *State v. Cantrell,* supra, at 543.

At first blush this statement would seem to end our inquiry into the matter. We find, however, that *State v. Cantrell,* supra, is distinguishable from the instant case. The unlawful act relied on in *Cantrell* was the crime of driving while under the influence of intoxicating liquor; while here the case is based on an allegation that the defendant was driving in excess of the posted speed limit. With respect to the underlying offense in *Cantrell,* we made the following observation:

"The most elaborate review of the subject of Negligent Homicide as applicable to motor vehicle codes which has come under our notice is included in an article by Stefan A. Riesenfeld in 25 Cal.Law Rev. pp. 1–40. There the author discussing the operation of the Negligent Homicide law in the State of Michigan, which was the first jurisdiction to establish the crime of negligent homicide committed in the operation of a vehicle, points out that: 'There was at common law and there is apparently in Michigan another group of cases, constituting manslaughter, where the issue of negligence is not involved at all, namely, homicide in the commission of an unlawful act (malum in se) not amounting to felony. The typical example is driving while under the influence of liquor. This is a crime in all jurisdictions; in Michigan it is a misdemeanor. Hence if death results the driver is guilty of manslaughter. The Michigan court in the famous case of *People v. Townsend,* (*People v. Townsend* (1921) 214 Mich. 267, 183 N.W. 177, 16 A.L.R. 902) which is the leading case in this field, succinctly pointed out that *driving while intoxicated is an unlawful act (ma-*

*lum in se) and that if death results the driver is guilty of manslaughter.'* " [Emphasis supplied] *State v. Cantrell,* supra, at 545.

See also *State v. Catellier,* 63 Wyo. 123, 179 P.2d 203, 220–222. The clear import of our decision in *State v. Cantrell,* supra, was to the effect that—at least where the underlying unlawful act was malum in se—the involuntary manslaughter statute was not impliedly repealed by the vehicular-homicide statute.

 ■ Although the recognition of a distinction between unlawful acts mala in se, as opposed to those which are only mala prohibita has been criticized, other courts support the distinction in the involuntary manslaughter context. 7 Am.Jur.2d, Automobile and Highway Traffic § 279; 40 C.J.S. Homicide § 60. We find it necessary to embrace this distinction here because of the confusion caused by the statutes with which we are concerned. Our reasoning is bottomed in the concept that unlawful acts which are mala prohibita do not supply the requisite criminal intent, unless the killing has been the natural and probable result of the act, while unlawful acts which are mala in se do supply the necessary criminal intent. *Keller v. State,* 155 Tenn. 633, 299 S.W. 803, 804. In proving involuntary manslaughter in a case where the unlawful act can be classified as malum in se, such as driving while intoxicated, then there need be no further proof going to the requisite criminal intent—since the act is considered wrongful in and of itself. Where, however, the unlawful act is merely malum prohibitum—a matter forbidden by statute but not otherwise wrong—there must be a showing that the act was done in a criminally-negligent manner, and that the death comes about as a proximate cause thereof. Perkins on Criminal Law, at 73–78 (2d ed. 1969).

Some confusion may have been created by dicta contained in *State v. Cantrell,* supra, at 545–546, where, in referring to the California law of manslaughter, we made the following observation:

"In 1945 the definition of manslaughter as a penal offense was revised by that legislature and in *People v. Mitchell*, 27 Cal.2d 678, 166 P.2d 10 the subject of negligent homicide was considered in connection therewith. It was there held that a person committed an 'unlawful act' within the meaning of the California Involuntary Homicide Statute if he violated *speed laws* designed to prevent injury to the person and the transgressor was guilty of involuntary manslaughter if death was caused by the act. And in the even later case of *People v. Barnett*, 77 Cal.App.2d 299, 175 P.2d 237, both the provisions of the Penal Code, Section 192 (the manslaughter statute) and the sections 476 and 450 of the Vehicle Code which made *violations of traffic signals* a misdemeanor were before the court and it was held that where a motorist who drove his truck into an intersection against a red traffic signal in violation of the Vehicle Code provisions and collided with an auto proceeding across the intersection on a green light and thereby caused the death of the occupants of the auto, the truck driver was guilty of involuntary manslaughter." [Emphasis supplied]

These references to traffic violations may have left the impression that *any* such violation, if death resulted, would be sufficient to supply the underlying unlawful act necessary for an involuntary manslaughter conviction. A reading of the cited case, *People v. Mitchell*, 27 Cal.2d 678, 166 P.2d 10, 12–13, could, indeed, leave the further impression that this court subscribes to the belief that a violation of speed regulations is an unlawful act malum in se. This is a stance which some other courts have assumed. See *State v. McIver*, 175 N.C. 761, 94 S.E. 682, 684. The position is premised on the belief that an act of speeding is in violation of a statute intended to prevent personal injuries and is in itself dangerous. Other courts state that only a degree of speed, which would constitute a reckless or marked disregard for the safety of others, supplies the added ingredient which takes the offense out of the stage of mere ma-

lum-prohibitum-conduct and into the malum-in-se area. See *State v. Lingman*, 97 Utah 180, 91 P.2d 457, 465–466. See also *Short v. State*, Okl.Cr., 560 P.2d 219, 221.

■ This court has never considered a speeding violation in the context of the "unlawful act" portion of the involuntary-manslaughter statute. We have considered speed with respect to the "culpable neglect or criminal carelessness" portion—which we held was impliedly repealed by the vehicular-homicide statute in *Thomas v. State*, supra. See *State v. McComb*, 33 Wyo. 346, 239 P. 526. In *State v. McComb*, supra, at 529, we clearly indicated that

" . . . carelessness by reason of driving at a speed that is unreasonable or is such as is likely to endanger life or limb is not necessarily criminal carelessness within the meaning of our statute providing for punishment for manslaughter. . . . "

As pointed out in *Thomas v. State*, supra, conduct which will satisfy the higher degree of negligence required by the manslaughter statutes—is essentially equivalent to that required for a vehicular-homicide conviction. Nevertheless, in *State v. McComb*, supra, at 529–530, we said:

"It will be noted that the foregoing provision creates a separate offense, distinct from that of manslaughter. But it is held by many of the cases that, where the statute fixes the rate of speed and makes a violation thereof a misdemeanor, and death results as the proximate cause thereof, the offender is guilty under provisions of law, also contained in section 7070, W.C.S.1920, to the effect that 'whoever * * * kills any human being without malice * * * involuntarily, but in the commission of some unlawful act * * * is guilty of manslaughter.' That is true, for instance, where a specific maximum rate is fixed—at 25 miles an hour, for instance. *People v. Kelly*, 70 Cal.App. 519, 234 P. 110; *State v. Long*, 7 Boyce (Del.) 397, 108 A. 36; Berry, Automobile, § 1567. But see, apparently contra, *State v. Clark*, supra; note 90 Am.St. Rep. 574, and cases cited. The same rule

has been applied when the speed is regulated by statute in general terms, as under section 19 of chapter 69, Sess.L.Wyo. 1921, namely, that no motor vehicle shall be operated at a rate of speed so as to endanger life or limb. *State v. Schaeffer*, 96 Ohio St. 215, 117 N.E. 220, L.R.A. 1918B, 945, Ann.Cas. 1918E, 1137; *Held v. Commonwealth*, 183 Ky. 209, 208 S.W. 772. See, also, seemingly to the same effect, *State v. Sudderth*, 184 N.C. 753, 114 S.E. 828, 27 A.L.R. 1180; *State v. Rountree*, 181 N.C. 535, 106 S.E. 669; *State v. McIver*, 175 N.C. 761, 94 S.E. 682. If this rule were applied in this state, an unlawful homicide committed in exceeding the speed fixed in section 19 of said act of 1921, supra, would at the same time be punishable under section 30 of said act as a felony by a penalty varying from a fine of $200 to imprisonment in the penitentiary for not more than 10 years, and under section 7070, W.C.S. 1920, punishing manslaughter at not to exceed 20 years' imprisonment in the penitentiary. . . ."

Although not faced with the question now before us, this court has, therefore, recognized the problem in this area of the law.

 Also with respect to speeding, although in the different context of a reckless-driving charge, we stated in *Norfolk v. State*, Wyo., 360 P.2d 605, 607–608:

> "The legislature of this state has considered what is and what is not safe driving. In Ch. 55, S.L. of Wyoming, 1959, it stated that a driver in residential districts should not exceed a speed of 30 miles an hour. A maximum speed even on four-lane divided highways is 70 miles per hour. It is true that it does not necessarily follow that exceeding the speed limit will constitute reckless driving within the meaning of our statute. There might, for instance, be an emergency. Again if a driver wants to pass another car which is being driven slowly, it may be necessary to exceed the speed limit for a short time in order not to endanger passengers in the car which is being passed. So, generally speaking, the facts and circumstances in a particular case should be considered in order to determine whether or not the statute has been violated. In Annotation, 52 A.L.R.2d 1337, 1361, it is stated:
>
> > " 'In the absence of a statute or ordinance denouncing as reckless driving the operation of a motor vehicle at an excessive or imprudent rate of speed, the mere speed at which a motor vehicle was operated does not alone determine whether it was operated recklessly, but is only a circumstance to be considered in connection with the surrounding circumstances in determining the question. * * *'
>
> "However, it has been held that in special cases excessive speed alone may show reckless driving. In *Fisher v. Zimmerman*, 23 Cal.App.2d 696, 73 P.2d 1243, 1246, the court stated:
>
> > " 'It is generally held that mere speed, of itself, does not constitute willful misconduct. This may not always be true. There may be a point at which the speed becomes so excessive, the danger of injury to the passenger so probable, that such extreme speed alone might be held to be willful misconduct. * * *'
>
> See also *Hall v. Mazzei*, 14 Cal.App.2d 48, 57 P.2d 948. In *People v. Nowell*, supra, the trial court held the defendant guilty of reckless driving because he attained and maintained for some time a speed of 75 to 80 miles per hour. The conviction of reckless driving was upheld, the court stating in part at 114 P.2d 84:
>
> > " 'We conclude, therefore, that one may be found guilty of reckless driving if he drives so as to show a wanton and reckless disregard of the possible consequences to persons or property of his manner of driving, even though it may not be a fact, and so he may not know, that the probable result of his driving will be to injure a person or property. We conclude, further, that the rate of speed at which a car is driven may of itself be so great that injury to persons and property is a distinct possibility, and that in this case the trial court was

warranted in determining that a speed varying between 75 and 85 miles per hour did endanger persons and property. * * * where, as in this case, a high rate of speed was attained and maintained, the trial court was justified in concluding that it was intentional, deliberate, and revealed that the driver pursued his course in the wanton and reckless disregard of the possible consequences.' "

Therefore, even in cases brought under our reckless-driving statute, speed alone does not necessarily suffice to show reckless disregard for the safety of others.

■ Turning to the problem at hand, we find that it would be incongruous to conclude that a mere violation of speeding regulations will supply the underlying "unlawful act" for an involuntary-manslaughter conviction. Such a violation, without a further showing of criminal negligence, would have been insufficient as to the remaining alternative language in the statute. *State v. McComb*, supra. Presumably, a speeding violation without a like showing would, therefore, likewise be insufficient to sustain a vehicular-homicide conviction. See *State v. Gibson*, 4 Md.App. 236, 242 A.2d 575, 581 n. 4 (cases cited), aff'd. 254 Md. 399, 254 A.2d 691. Finally, it would also be insufficient, in certain cases, to even sustain a reckless-driving conviction. *Norfolk v. State*, supra. We hold, therefore, that a speeding violation is an unlawful act, but only in the sense that it is malum prohibitum. Thus, in order to sustain an involuntary manslaughter conviction, premised on the unlawful act of speeding, there must be an additional showing equivalent to criminal negligence and that death resulted as a proximate cause thereof.

■ Having concluded that criminal negligence proximately resulting in death must be shown, in a situation like that which is presented in the instant case, we must further decide whether there is a meaningful difference between the "unlawful act" portion of § 6–58, supra, and § 31–232(a), supra. As in *Thomas v. State*, supra, our task is to determine if the stat-utes can stand together, or if they are repugnant by virtue of relating to the same subject and are directed at a distinct offense with the same object. *State v. Cantrell*, supra, at 542. We approach with a full realization that repeals by implication are not favored. *Thomas v. State*, supra. There is no question that under § 6–58, supra, there must be proof of an unlawful act, while this element need not be shown under § 31–232(a), supra. It is on this distinction which the State would have us rely. We find, however, that this distinction is without substance—at least insofar as it relates to crimes classified as mala prohibita. It seems incongruous to us, and we cannot believe that the legislature intended such a result in the motor-vehicular area, that *any* traffic violation could potentially form the basis for an involuntary-manslaughter conviction. This is true, particularly in light of the fact that the same violation, standing alone, would be insufficient to sustain a conviction under § 31–232(a), supra—a statute whereunder the penalty is substantially less. To permit the State to charge a defendant under § 6–58, supra, under such circumstances, would leave § 31–232(a), supra, with little or no substance. See *Short v. State*, supra.

By holding that one may not be charged with involuntary manslaughter in conjunction with a misdemeanor speeding violation, we in no way overrule prior cases holding such charge proper where there is proof of driving while intoxicated. See *State v. Cantrell*, supra.

## OTHER ASSERTED ERRORS

Since the case must be remanded for a new trial under § 31–232(a), supra, we find it advisable to consider other asserted errors so that they will not arise in a retrial hereof.

■ Defendant contends the trial court committed error in allowing James Viapando, an occupant of the Bartlett vehicle, to testify that the vehicle was driven at 100 miles per hour on the highway between Shoshoni and Riverton. In *Ries v. Chey-*

enne *Cab & Transfer Co.*, 53 Wyo. 104, 79 P.2d 468, we held, in a civil action, that evidence of speed which is remote from the time and place of an accident is inadmissible, unless connected with other evidence *showing fairly constant speed was maintained to the point of accident.* We also held, however, that the question of remoteness depended largely on the facts of each case, and rests to a great extent in the sound discretion of the trial court. See *Fleming v. Lawson*, 10 Cir., 240 F.2d 119, 121. Where the evidence is offered to show defendant's state of mind just prior to the accident, as well as speed at the time of the accident, then high speed at a relatively remote point is admissible. *Commonwealth v. Honeycutt*, 227 Pa.Super. 265, 323 A.2d 775, 778–779. Cf. *Nash v. State*, 253 Miss. 715, 178 So.2d 867, 869. In the present case, the record discloses no evidence which would indicate that the Bartlett vehicle maintained a fairly constant high rate of speed to the point of accident. The record does disclose that after the defendant returned to Riverton from Shoshoni, he negotiated a turn and then proceeded west on West Main Street. These events occurred sometime during a thirty-minute time-span prior to the accident. Although there is evidence tending to show the defendant's speed immediately prior to the accident, there is no evidence which would connect the defendant's highway speed to his speed at the time of the accident. We cannot, as a matter of law, say that in this case there was "other evidence showing a fairly constant speed was maintained up to where the accident occurred." This is not a case, therefore, like *Ries v. Cheyenne Cab & Transfer Co.*, supra, where evidence of speed two blocks from the accident scene was held admissible. The evidence here should not have been admitted inasmuch as it allowed a prejudicial inference by the jury of extremely high speed at the time of the accident.

Defendant objected to the admission of a photograph of defendant's car at the scene of the accident on the basis that it prejudicially gave an impression of force. It is true that if *posed* photographs are in any way confusing, prejudicial or misleading, the trial court should take adequate precautions or reject the evidence, particularly when speed is sought to be established. *Edwards v. Harris*, Wyo., 397 P.2d 87, 94–95; *Logan v. Pacific Intermountain Express Company*, Wyo., 400 P.2d 488, 493; and *Potts v. Brown*, Wyo., 452 P.2d 975, 978–979. The pictures admitted here were not posed, but were verified as actually depicting the accident scene. We find there was sufficient foundation provided and that the trial court did not err in admitting the evidence.

Thirdly, defendant contends that a written statement, given by him while in the hospital, was admitted without proper foundation as to advisement of legal rights. Defendant withdrew his objection to this statement, and eventually approved an altered statement as to form. We need not, therefore, consider the matter on appeal. Even if defendant had not withdrawn his objection, it appears from the record that he was properly advised of his rights. See *Dryden v. State*, Wyo., 535 P.2d 483, 490.

The court refused to give offered Instructions "A," "B," and "C." The first two instructions dealt with burden of proof and intervening causes. It was not error to refuse these instructions, since they were adequately covered by other instructions. Instruction "C" was a lesser-included-offense instruction for negligent homicide. Consideration of this argument is rendered meaningless by our decision herein.

Finally, defendant claims he was denied a substantial legal right to a preliminary hearing on the underlying act of speeding—since the original complaint referred only to driving while under the influence of intoxicating liquor. The information filed against defendant, after his preliminary hearing, included the speeding allegation. This is not a situation where there is an amended information. See Rule 9(c), W.R.Cr.P. Rather, it is a situation where there is a variance between the original complaint and a subsequent information. See 41 Am.Jur.2d Indictment and In-

formation § 20; and 42 C.J.S. Indictments and Informations § 73(j). Wyoming has no specific provisions governing such variances. Generally, where an information can be filed only after a preliminary hearing, as is true in Wyoming under Rule 9(a), W.R. Cr.P., the information must charge substantially the same offense alleged in the complaint under which a preliminary hearing was held. *State v. Perry*, 27 Utah 2d 48, 492 P.2d 1349. This is substantially the theory on which Rule 9(c), supra, is based. In the present case, defendant was charged with involuntary manslaughter in both the complaint and the information—only an underlying act was added. In light of the fact that the State need only have charged the offense of manslaughter in the words of the statute, we cannot see how the offense charged was changed, or how the defendant was prejudiced. See *Shoemaker v. State*, Wyo., 444 P.2d 309.

We find that defendant's remaining arguments lack cogency, or have been dealt with by other discussions herein.

Reversed and remanded for a new trial under § 31–232(a), supra, in conformity with what has been expressed in this opinion.

RAPER, Justice, concurring specially.

I can and do concur only in the result reached in this case because it is consistent with my analysis. I am sympathetic with the dissent because it points up the quandary into which the majority is leading us.

As can be seen in the majority opinion and the dissenting opinion, down through the years, there has been and still is a continuing struggle by this court to ascertain the intent of the legislature in the enactment of the negligent homicide statute, § 31–232, W.S.1957, C.1967, as far as the manslaughter statute, § 6–58, W.S.1957, is concerned.

I think the court has become so involved in technical distinctions with respect to the question at hand, that our rulings have become a thicket of misty confusion. The effort to distinguish one case from the other to reach some just, as well as reasonable result, has developed into a real puzzle as to what we might do next under a given state of facts.

Stated simply, it seems to me that the legislature in its failure to speak clearly in enacting § 31–232 as part of the Uniform Act Regulating Traffic on Highways, § 31–77, et seq., W.S.1957, C.1967, intended that all driving violations, resulting in the death of another, should be considered exclusively for prosecution under § 31–232; the element of reckless disregard for the safety of others, of course, must necessarily be present. The vehicular homicide statute, as the most recent expression of the legislature, I reluctantly must construe as repeal by implication of any part of the manslaughter statute, in conflict; there is no other course.

That conclusion is bolstered by § 31–125, providing that:

"Any person who drives any vehicle in willful and wanton disregard for the safety of persons or property is guilty of reckless driving."

That section applies in the absence of death as a result but its companion, § 31–232, in identical language except word arrangement, applies when a death is the product of such driving. With such a standard interpretation, everyone, the public, law enforcement, the bench and bar should know where it stood. I would, naturally, exclude the intentional use of a motor vehicle to commit murder in any degree. No one would then have to go through some tenuous line of reasoning to determine what is malum prohibitum, what is malum in se or try to decide what Supreme Court case, drawing some slender line, applied to move negligent homicide to manslaughter or vice versa.

I realize that my view may place drunken driving, resulting in death, within the category of negligent homicide. That would be personally abhorrent to me because I believe it deserves to fall within the classifica-

tion of a felony but neither I, nor can any segment of the judiciary, legislate. Drunken driving is part of state traffic legislation. Section 31–129, W.S.1957, C.1967, 1975 Cum.Supp. If the legislature wished it to be a felony, it is a matter for legislative determination, not judicial. I agree with the dissent that the majority is creating an inconsistency in that regard.

A careful reading of the full majority opinion by Justice Riner in *State v. Cantrell*, 1946, 64 Wyo. 132, 186 P.2d 539, indicates the court was also considering the application of a third statute, *since repealed,*[1] covering death resulting from the operation of a motor vehicle, worded in part as follows:

"( * * * Section 60–138, W.C.S.1945) * * * 'if any person operating a motor vehicle in violation of the provisions of this article shall, by reason thereof, seriously maim, injure or disfigure or cause the death of any person or persons, such person shall be deemed guilty of a felony, and upon conviction shall be imprisoned in the penitentiary for not less than one year nor more than fourteen (14) years.' "

The court was then faced with the availability of that statute, which would permit a felony conviction for death caused by vehicle operation, exclusive of the manslaughter statute. I do not believe, as the majority does, we can categorically say at this time what we will do when confronted with a manslaughter charge in a drunken driving case, in the absence of that third statute. There is no longer hovering in the background the influence of § 60–138, W.C.S. 1945, which gave the prosecutor an equally serious choice to turn to if manslaughter would not lie.

It appears to me that it is time that the legislature act as suggested by Justice Blume in his special concurring opinion in *State v. Cantrell*, supra, commented upon in *Thomas v. State*, Wyo.1977, 562 P.2d 1287, and mentioned before in *State v. Wilson*, 1956, 76 Wyo. 297, 301 P.2d 1056,[2] Justice

Blume likewise had the same hesitancy that I entertain and the legislature should "fix a more recognizable rule of guidance for the courts." 64 Wyo. at 157, 186 P.2d at 548. Death on the highways is so frequent, so serious and so final to the victim that the situation commands legislative action.

I have no disagreement with the majority in its handling of "OTHER ASSERTED ERRORS."

THOMAS, Justice, dissenting.

In *State v. Cantrell*, 64 Wyo. 132, 186 P.2d 539 (1947), this Court posed one issue, at 64 Wyo. 144, 186 P.2d 542, as follows:

"The query arises then—Was the entire manslaughter statute, Section 32–205, W.R.S.1931, Section 9–205, W.C.S.1945, supra, repealed by Section 24, Chapter 126, Laws of Wyoming 1939, Section 60–413, W.C.S.1945 [the negligent homicide statute], as asserted by appellant? * * "

This issue was resolved by the Court at 64 Wyo. 145, 186 P.2d 543:

"With the above rules in mind it is plain that Section 24, Chapter 126, Laws of Wyoming 1939 did not repeal in toto Section 32–205, W.R.S.1931, supra. Section 24 aforesaid fails to deal with not only the inhibition of the statute concerning voluntary manslaughter but also the ban of the law upon involuntary manslaughter 'in the commission of some unlawful act'. *It is not repugnant to either of these provisions.*" [Emphasis added.]

In justifying this holding the Court cited and relied upon *People v. Mitchell*, 27 Cal.2d 678, 166 P.2d 10 (1946), a case in which the unlawful act was speeding.

Within the past six months this Court stated:

"Earlier, in *Cantrell*, supra, it was clearly decided that an implied repeal of the manslaughter statute was not effected insofar as the commission of an unlawful act was concerned, * * *." *Thom-*

---

1. Deleted by amendment. Section 1, Chapter 69, Session Laws of Wyoming, 1957.

2. See also Criminal Liability for Death Caused by Operation of Motor Vehicles in Wyoming, 18 Wyo.L.J. 213.

as v. State, Wyo., 562 P.2d 1287, 1289 (1977).

The majority opinion poses the primary issue in the instant case as follows:

"Although there are other issues, the primary question presented in this appeal is whether the 'unlawful act' portion of § 6–58, W.S.1957, dealing with the crime of involuntary manslaughter, was repealed by implication with the enactment of § 31–232(a), W.S.1957, C.1967, which deals with the crime of vehicular homicide." [Footnotes omitted.]

This question is answered in the affirmative by the majority opinion, and an attempt is made to factually distinguish the Cantrell case. State v. Cantrell, supra, is an unlawful act case not simply a driving while under the influence of intoxicating liquor case. While Cantrell did involve different facts, the rule of law is not distinguishable, and it follows that what was said in Cantrell and reaffirmed in Thomas and what is said here are inconsistent. If we are to overrule Cantrell, candor demands that we so state.

I am satisfied that Cantrell represents the correct rule. It is generally assumed that Wyoming adopted its criminal code from Indiana. In § 1908, Indiana Revised Statutes, 1881, which were extant at the time that § 6–58 first was adopted as Chapter 73, § 17, S.L. of Wyoming, 1890, it was provided:

"Whoever unlawfully kills any human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter, and upon conviction thereof, shall be imprisoned in the State prison not more than twenty-one years nor less than two years."

The statute adopted by Wyoming reads as follows, with the differences indicated by italics:

"Whoever unlawfully kills any human being without malice, express or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty years." § 6–58, W.S.

Prior to the time that Wyoming adopted this statute is had been construed in Indiana to the end that there were two ways of committing involuntary manslaughter in Indiana. In State v. Dorsey, 118 Ind. 167, 20 N.E. 777, 10 Am.St.R. 111 (1889), the Supreme Court of Indiana stated:

"* * * 'Involuntary manslaughter is where a man doing an unlawful act, not amounting to a felony, by accident kills another, or where one kills another while doing a lawful act in an unlawful manner.' Com. v. Kuhn, supra [1 Pittsb. R. 13]. See Moore, Crim.Law, § 863. See Reg v. Skeet, 4 Fost. & F. 931."

See Napier v. State, 255 Ind. 638, 266 N.E.2d 199 (1971); Kraft v. State, 202 Ind. 44, 171 N.E. 1 (1930); Howell v. State, 200 Ind. 345, 163 N.E. 492 (1928); Dunville v. State, 188 Ind. 373, 123 N.E. 689 (1919).

The proper construction of the Wyoming statute relating to involuntary manslaughter is that the Wyoming legislature codified the alternative method of committing the offense which was by case law engrafted upon it in Indiana, that is, the commission of a lawful act in an unlawful manner. This is what is connoted by the words in the Wyoming statute, "or by any culpable neglect or criminal carelessness." In Thomas v. State, supra, this Court held insofar as that portion of the involuntary manslaughter statute was concerned it had been repealed by implication in the adoption of the negligent homicide statute, § 31–230(a), W.S. I would, however, continue to follow State v. Cantrell, supra, to the end that when the circumstances manifest accidental killing by one involved in the commission of an unlawful act, not amounting to a felony, and the unlawful act is the proximate cause of the death the offense committed is involuntary manslaughter. While this may seem a harsh result, human life is generally regarded as worthy of extraordinary protective measures. It is the prerogative of the legislature to determine the consequences

which may attach to an unlawful act that takes a life, and it can, if it chooses to, make those consequences more severe than those that attach to taking a life by recklessness or negligence.

The majority opinion refers to cases which are in point and which, at least in one instance, our Court already has followed. *People v. Mitchell*, supra, was relied upon extensively in *State v. Cantrell*, supra. *State v. McIver*, 175 N.C. 761, 94 S.E. 682 (1917), is cited in *People v. Mitchell*, supra, and reaches the same result. Other similar cases are *State v. Deane*, 75 Idaho 149, 268 P.2d 1114 (1954); *State v. Salhus*, 68 Idaho 75, 189 P.2d 372 (1948); and *Schluter v. State*, 153 Neb. 317, 44 N.W.2d 588 (1950). Without considering some of these cases, and ignoring the commitment to the rule expressed in *People v. Mitchell*, supra, by this Court in *State v. Cantrell*, supra, the majority opinion assumes that in Wyoming in the instance of a charge of involuntary manslaughter in which the unlawful act relied upon is a speeding violation, a showing that the act was done in a criminally negligent manner is required. The Court further assumes that even though, under that theory, the elements of the offense require a showing of an unlawful act committed in a criminally negligent manner that additional element is without significance, and the crime is substantially indistinguishable from negligent homicide. This is a peculiarly strained result in the light of *Cantrell v. State*, supra, which leads to a conclusion that Wyoming law does not require that the unlawful act be committed in a criminally negligent manner.

In the instant case I would agree that the judgment should be reversed and the case sent back to the district court for retrial. I would permit the submission of the involuntary manslaughter violation to the jury, but would also require the included offense of negligent homicide be submitted to the jury assuming that the defendant presented a theory which would be consistent with that offense. I suggest, for example, that in this instance the jury might determine the speeding violation was not the proximate cause of the decedent's death, but that in-

stead the proximate cause was the reckless operation of the vehicle in handling it so that it struck the median while being driven at a high rate of speed. This latter conduct could constitute the doing of a lawful act in an unlawful manner and conceivably could be found to be a violation of the negligent homicide statute while the circumstances might be found not to violate the involuntary manslaughter statute.

As I interpret the statute the evidence of speeding at a remote place would not be relevant. My construction of the involuntary manslaughter statute would not require that any particular state of mind be manifested in order for a person charged with that offense to be found guilty.