The STATE of Utah, Plaintiff
and Respondent,

v.

George Albert MARSH, Defendant
and Appellant.

No. 17120.

Supreme Court of Utah.

Aug. 24, 1982.

Ginger L. Fletcher, Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant appeals his conviction of robbery in violation of Utah Code Ann., 1953, § 76–6–301, contending that out of court identifications violated due process and that the trial court erred in excluding evidence of defendant's relationship with a Salt Lake County sheriff's deputy who linked the defendant with eyewitness descriptions of the robber. We affirm.

At approximately 5:20 p.m. on August 24, 1979, the Valley Bank located at 1325 South Main, Salt Lake City, Utah, was robbed of $1700. Upon being handed a note by the robber, the bank teller became scared and, according to her testimony, "just stared" at the robber. Upset by this action, the robber harshly ordered the teller to hurry with the money. The teller complied with the robber's order not to touch any buttons or press any alarms. He reached through the opening in the glass window with his left hand and took the money from the teller. The teller watched him as he left the window and departed through the south door of the bank. She then closed her window, activated the alarm, and reported the incident to her supervisor.

Within a half hour of the incident, the bank teller gave three descriptions of the robber. The first was within ten minutes of the robbery and was given to Officer McIntyre of the Salt Lake City Police Department. She described the assailant as a white male about 40 years old, 150 pounds, 5′5″, with brown shoulder-length hair balding on top, a mustache, and a beer belly. He walked with stooped shoulders and a long stride and wore a blue and brown, horizontally-striped, long-sleeved pullover shirt.

At Officer McIntyre's request, the teller filled out the bank's description form on which she described the assailant as a white male, 40 year old, 150 pounds, 5′4″ to 5′5″, with low cheek bones and fleshy cheeks, a mouth which turned down at the corners, thin lips which were red and cracked, dull stained teeth, a short to medium mustache with ends that turned down, a gruff speaking manner, blood-shot eyes, straight brown hair colored at the temples, and wearing a blue and brown striped pullover shirt with long sleeves.

Approximately 25 minutes after the robbery, upon being interviewed by an F.B.I. agent, the bank teller described the robber as a short white male, 40 to 45 years old, 5′10″, 140 to 150 pounds, unshaven, with straight, dark brown, shoulder-length hair balding on top, a slight brown mustache, stooped shoulders, wearing a lined pullover shirt and gray jeans, and smelling of beer.

The bank custodian, also at the bank at the time of the robbery, gave a description to the F.B.I. agent several days after the incident. Although his description was not as detailed as that of the bank teller, he said that he thought the robber looked red in the face and had had something to drink. He said he had previously seen the robber driving a state van which transported prisoners and that he had heard people refer to him as "George."

At a meeting of law enforcement officers at which the F.B.I. agent relayed the descriptions provided by the bank teller and the bank custodian, Larry Hayes, a detective of the Salt Lake County sheriff's office, commented that the description sounded as if it referred to George Marsh, an inmate at the Utah State prison.

One month after the robbery, the bank teller was shown five black and white photographs of Utah State prisoners, including a picture of defendant. The teller identified defendant as the robber. Although the

bank custodian was not able to identify any individual from the photographs, he identified defendant from a line-up comprised of Utah State prisoners chosen with the assistance of defendant. At the line-up, defendant appeared without a mustache and in a shortsleeve shirt, revealing elaborately tatooed arms.

The bank teller's first in-person identification of defendant occurred on the day of the preliminary hearing. Without knowing that defendant was to appear at the hearing, and without her attention being called to him, the bank teller identified as the robber a prisoner who was walking down the hallway outside the court room prior to the hearing.

At the trial both the bank teller and the custodian identified defendant as the bank robber. Testimony of a Utah State prison employee verified that George Marsh was a driver for the prison's work release program and responsible for transporting prisoners to and from their work assignments. Defendant was authorized to make return runs to the prison between 4:30 and 7:00 p. m. Records indicate that on the date in question the inmates returned at approximately 7:11 p. m. The same employee confirmed that Marsh always had a mustache.

Defendant testified at trial that he was 48 years of age, 5'4", had worn a mustache for four years, and was the only driver named George who transported prisoners to their work assignments. He admitted that as an inmate he wore levis but claimed he did not wear them when he drove for the work release program.

■ The potential for unfairness in line-up procedures is well recognized. We agree with defendant that it is necessary to examine the totality of the circumstances of an eyewitness identification to determine whether the confrontation was so unnecessarily suggestive and so conducive to mistaken identification as to result in a denial of due process. This standard has been enunciated by the United States Supreme Court in *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), and in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In *State v.*

*Perry,* 27 Utah 2d 48, 492 P.2d 1349 (1972), this Court focused on whether there was anything in an identification procedure "which should be regarded as so suggestive or persuasive that the identification was not a genuine product of the knowledge and recollection of the witness." Compare *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and *State v. Wettstein,* 28 Utah 2d 295, 501 P.2d 1084 (1972).

■ On a review of the record, we find no impropriety in the teller's identification of defendant in the hallway prior to the preliminary hearing. The encounter was by chance and not in any way suggestive so as to undermine the reliability of the identification. Finally, a review of the photographs shown the bank teller, as well as the picture of the line-up viewed by the bank custodian, does not reveal a selection of individuals which was suggestive.

■ We think the out-of-court identifications in the instant case were not in any way suspect. The inconsistencies in the bank teller's three descriptions of the assailant shortly after the event are stressed by defendant. However, the differences in her descriptions are not significant. Despite some differences in her description of defendant's height, she twice described him as short. The one description of him as 5'10", on the facts of this case, is not a difference of such magnitude as to seriously undermine her identification. Furthermore, the minor discrepancies in the description of defendant's mustache are of no significance. That she had initially seen the robber only from the waist up at the counter, but later described him as wearing jeans, does not cast doubt on the validity of the identification. Although her initial confrontation was at the counter, upon the defendant's departure from the bank she did obtain a full view of him.

The circumstances surrounding the robbery provided the bank teller with adequate conditions to view the robber. Her initial descriptions of the defendant were basically consistent and not discrepant with defend-

ant's actual appearance. Because of the convincing evidence establishing the reliability of the bank teller's in-court and out-of-court identification of defendant, and the corroborative evidence of the custodian, the slight discrepancies or errors in the custodian's statements to the investigating agents did not create a reasonable likelihood of misidentification.

██ Finally, we find no merit in defendant's argument that testimony regarding his prior relationship with Detective Larry Hayes was improperly excluded. Although evidence having a tendency to prove or disprove the existence of any material fact is generally admissible at trial, the trial court of necessity has considerable discretion in ruling on the admissibility of peripherally relevant evidence. In the instant case, Larry Hayes did not testify. His involvement in the investigation amounted to no more than his suggestion that the description given by the bank teller and custodian resembled George Marsh. He neither showed photographs to the witnesses nor conducted a line-up. Whatever Larry Hayes' motive was in suggesting defendant's name to the F.B.I. agent as a possible suspect, it does not bear on any issues presented in this case. The trial court's exclusion of evidence was not an abuse of discretion.

Affirmed.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.